JOHN CLEMMONS, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. Erasures and interlineations in the same ink and handwriting as the body of an indictment, that are not only not contrary to the probable meaning of the indictment as it stood prior to their insertion but which make that meaning clear, will in the absence of proof to the contrary be presumed to have have been made before the indictment was presented by the grand jury.

2. A demurrer to a plea in abatement and the ruling of the court thereon are matters of record to be exhibited to an appellate court by the record proper, and not by bill of exceptions.

3. The law does not require the county commissioners of any county to make a list of the persons sworn and enpanelled as grand jurors at any term of the Circuit Courts.

4. The dying declarations of a deceased relating to what was said by him or the accused and what happened between them at the time of the fatal encounter are properly admissible, in prosecutions for unlawful homicide.

5. Any expressions of one mortally wounded at the time of making an alleged dying declaration, tending to show that he then believed his death was imminent, are admissible for the purpose of determining whether the declaration then made was in fact a dying declaration.

6. Evidence of acts, remarks or conduct of one accused of the crime of murder showing unfriendliness on his part toward the deceased is admissible, though such acts, remarks or conduct occurred two or three weeks prior to the homicide, where other testimony in the case tends to show acts of unfriendliness between the parties at intervals for more than a year prior to the homicide.

7.  The omission of the court to instruct the jury upon any point
    of law in a case is not available to one who has not requested
    an instruction on that point and taken an exception to the
    ruling of the court refusing his instruction.

8.  A motion for a new trial upon the ground of the illness of a
    juror is properly refused where it is not shown that the juror
    was when the verdict was rendered or before, so ill that he
    could not give careful and conscientious consideration to the
    merits of the controversy then pending before him, or that the
    verdict rendered by him did not express his deliberate con-
    viction of defendant's guilt upon a full and careful considera-
    tion and comparison of the evidence.

9.  Improper argument of counsel for the State in the hearing of
    the jury, if checked by the court as soon as it is brought to
    its attention and not further persisted in, is not sufficient to
    require the court to grant a new trial.

10. Where the evidence in terms does not make out a case of
    murder in the third degree, but is sufficient to sustain a
    higher degree of murder, the verdict for murder in the third
    degree must be sustained as against a motion for a new trial
    upon the ground that the evidence is insufficient to support
    the verdict.

Writ of Error to the Circuit Court for Holmes
County.

The facts of the case are stated in the opinion of the
court.

*C. M. Cox,* for Plaintiff in Error.

*William B. Lamar,* Attorney-General, for the State.

CARTER, J.

At the Fall term, 1900, of the Circuit Court of
Holmes county, plaintiff in error, was convicted of mur-
der in the third degree upon an indictment charging him

with the crime of murder in the first degree, and from the sentence imposed sued out this writ of error.

I. Defendant moved to quash the indictment upon two grounds; first, that it fails to allege that the deceased was a human being; second, because of important and material interlineations and erasures therein, in this, that the words "with intent" and "to" have been stricken out; and the word "did" inserted in lieu of the word "to," all of which is of substance in that it changes the offence from an assault with intent to murder to that of murder. The ruling denying this motion is assigned as error. The indictment alleges distinctly that the deceased, William Barton, was a human being; that defendant on March 1, 1899, in Holmes county, Florida, without authority of law, of his malice aforethought and from a premeditated design to effect the death of Barton, assaulted him with a deadly weapon, to-wit: an open knife, and then and there unlawfully &c., cut, stabbed and wounded him in and upon the body, giving unto him by means of such cutting, stabbing and wounding with said knife, unlawfully, &c., one mortal wound of the depth of six inches, and of the breadth of half an inch; and that of said mortal wound Barton then and there instantly died, and then proceeds literally as follows: "And the grand jurors aforesaid upon their oaths aforesaid do say that the said John Clemons did then and there wilfully, without authority of law, of his malice aforethought and from a premeditated design to effect the death of him the said William Barton, then and there did kill and murder him the said William Barton against the form," &c. The original indictment has by an order of the Circuit Judge been transmitted to this court to be considered in connec-

tion with the copy certified in the transcript. The original appears to have been a printed form of indictment for assault with intent to murder with appropriate blank spaces for alleging the time, place and circumstances of the assault, and the names of the parties. In this indictment the blanks are properly filled so as to charge the crime of murder in the first degree, and the only complaint is that in the part quoted the printed words "with intent" are erased, and the printed word "to" is also erased and the word "did" interlined above it. It is not claimed that the erasures or interlineations were in fact unauthorized or that they were made after the indictment was presented by the grand jury, and looking at the original we find that they appear to have been made with similar ink to that used in filling out the blank spaces and in the same handwriting, and that they are not only not contrary to the probable meaning of the indictment as it stood before their insertion, but evidently make that intention clear. This being true, it must be presumed that the alterations were made before the indictment was presented by the grand jury; and the other ground of the motion being erroneous in point of fact, as an inspection of the indictment shows, the Circuit Court did not err in denying the motion to quash.

II. The defendant pleaded in abatement, among other pleas the following: "3rd. The defendant for further plea in abatement says that no list of the persons sworn and empanelled as grand jurors and finding and presenting the indictment was ever made by the board of county commissioners of the county of Holmes." It is claimed that the court erred in sustaining the State's demurrer to this plea. The record proper does not show

that a demurrer was interposed to this plea. In the bill of exceptions we find a demurrer and the ruling of the court sustaining it, but these are matters of record, to be exhibited by the record proper and not by bill of exceptions. We will say, however that the plea was without merit, as it tendered an immaterial issue. The law does not require the county commissioners of any county to make a list of the persons sworn and empanelled as grand jurors at any term of the court. If it was the intention of the defendant to allege in this plea that the county commissioners at their January meeting failed to select and make a list of the names of persons to be placed in the jury box from which to select grand and petit jurors, as argued in his brief, he has wholly failed to do so.

III.    In this record we have two bills of exceptions, one purporting to contain the exceptions taken to rulings of the court, the other purporting to contain all the evidence adduced at the trial, both presented and signed at the same time. In the bill containing the exceptions it appears that the State introduced Mrs. Barton, wife of the deceased, and having laid the predicate for the admission of the deceased's dying declarations offered to prove by her that what the deceased Barton had said as to how he came to his death, and also what deceased said as to the cause of the mortal stroke by asking her the question: "What further, if anything, did your husband say?" The State also offered to prove by another witness, Ransom Powell, the deceased's narration of the circumstances under which he was cut, and by another witness, G. W. Arnold, what the deceased had said touching the conversation between him and the defendant, and the deceased's narration of the circumstances leading up to and surround-

ing the difficulty. The defendant objected to the several matters so offered to be proven, upon the ground that the matters sought to be elicited were not properly admissible as parts of dying declarations but were opinions of the deceased, and hearsay, and calculated to prejudice the minds of the jury against him. These objections were properly overruled. In Savage v. State, 18 Fla. 909, it is said that dying declarations are competent so far as they relate to facts occurring at the time of the encounter, the weapons used, the parties using them and how, what was said and what was done and like matters, excluding everything except that which relates to the *res gestae.* Nothing appears upon the face of the matters offered to be proven or of the question propounded tending to show that the matters objected to would elicit proof of the deceased's opinion, or matters of heresay, or matters not properly parts of a dying declaration. The inquiries were evidently framed with a view to elicit the deceased's declarations as to what was said by the parties and what happened between them at the time of the fatal encounter. To this extent the matters were clearly admissible as parts of the dying declarations.

From the same bill it appears that in answer to the question: "What further, if anything, did your husband say?" Mrs. Barton testified that deceased stated that he and Clemmons were talking and that Clemmons stuck his knife in him; that he did not know that Clemmons was mad with him, and that deceased said if he just knew what Clemmons cut him for he would die satisfied. The defendant moved to strike the testimony of this witness to the effect that Barton said if he only knew what Clemmons cut him for he would die satisfied, on the ground

that such statement was not properly admissible as a dying declaration and was calculated to prejudice the minds of the jury against him. The court overruled the objection and defendant excepted. This exception does not purport to give the language of the witness relative to the matter sought to be stricken, but only the substance of what she stated. In the bill containing the evidence the testimony is given in the language of the witness and it represents her as saying upon the subject-matter of this exception: "He said John Clemmons cut him. He said that he and Clemmons were talking and that Clemmons stuck his knife in him. He said that he didn't know Clemmons was mad with him. He said that Clemmons killed him, and that if he only knew what he killed him for he would die satisfied." Nowhere in this bill does it appear that the witness stated that deceased said "if he only knew what Clemmons *cut* him for he would die satisfied," and it purports to give all the testimony in the case in the language of the witnesses. It would appear, therefore, that the use of the word "cut" in the exception is a clerical error, and that the motion to strike was really addressed to the expression. "He said that * * * * if he only knew what he killed him for he would die satisfied." This expression was used by the deceased at the time he made his dying declaration, and, in connection with other expressions used by him at the time, tended to show that he then believed that his death was imminent. In this view of the matter the motion to strike was properly overruled. Richard v. State, 42 Fla. 528, 29 South. Rep. 413.

IV. Pomp Benton, a witness for the State, testified that a short time—about two or three weeks—prior to

the homicide defendant came to him in the woods where witness was working and told witness that deceased had shot his dog and said if witness desired to whip deceased, he, defendant, would get him to go out there and would see that it was a fair fight; that defendant then walked off a piece and when he came back he had his knife open in his hand, sat down on a log, began pecking on it with the knife and said he was going to stick his knife in some son of a bitch. Defendant moved to strike that portion of this testimony to the effect that two or three weeks prior to the homicide defendant while talking with witness stuck his knife in a log and said he was going to stick that knife in some son of a bitch, on the ground that it was irrelevant, immaterial and too remote. This motion was properly overruled. If the defendant by the remark objected to had reference to the deceased, it was relevant and material as tending to show defendant's ill will toward him, and that he then designed to do him serious injury. The conversation immediately preceding this remark related to the deceased and its nature indicates some unfriendliness on the part of the defendant toward him, and furnishes ground for an inference that defendant's remark had reference to the deceased. The circumstance occurred within two or three weeks of the homicide, and was not too remote when considered in connection with other testimony in the case tending to show acts of unfriendliness between the parties for more than a year previous to the homicide. It was proper to leave the testimony of this witness before the jury for them to determine whether the remark had reference to the deceased.

V. The defendant excepted to the following in-

struction given by the court: "Under the laws of this State unlawful homicide may be either murder in the first, second or third degree or manslaughter, and under an indictment for murder in the first degree, as in this case, the defendant may be convicted of any one of these crimes of which the evidence establishes his guilt beyond a reasonable doubt." It is not contended that the instruction is in itself erroneous or that it announced an incorrect proposition of law, but it is insisted that the court should have given in connection with it an instruction defining murder in the third degree, which it failed to do. The defendant did not request the judge to give an instruction defining murder in the third degree; and under the rule prevailing in this State he can not avail himself of the omission to so instruct in the absence of a request on his part so to do, and an exception to the refusal to grant his request. Rawlins v. State, 40 Fla. 155, 24 South. Rep. 65; McCoy v. State, 40 Fla. 494, 24 South. Rep. 485, and authorities there cited.

VI. It appears from the affidavit of one of the jurors filed in support of the motion for a new trial that while the jury were considering their verdict he became violently ill and at the time of the rendition of the verdict was still very ill—so much so that within an hour or two after the rendition of the verdict he was twice compelled to send for a physician, and his illness was of so violent a nature that his friends were compelled to sit up with him the entire night on which the verdict was rendered. It also appears from this affidavit that while deliberating over their verdict, the jury were in a room adjoining the court room; that another criminal case was on trial in

the court room; that the counsel for the State in arguing
the last named cause to the jury trying it was within easy
hearing distance, about fifteen feet, of the jury in this
case who were then in the adjoining room where they
had been for about eight hours considering their verdict
without having agreed upon a verdict; that the State's
counsel in arguing the other case made frequent refer-
ences to this case, the remarks being to the effect that the
juries of the country were the law; that school houses
and churches had as well be abandoned if juries of the
country would not convict men brought before them;
that there was a jury in that room now (referring to the
jury in this case) trying a case of murder; that that jury
and the court had been here spending a large amount of
money and time trying the case, and these matters were
in the hands of the juries of the country, and if they re-
fused to convict men before them on trial there was no
use of courts; that the weak must succumb to the strong,
and other remarks in the same strain. It also appears
from said affidavit that the Clemmons jury ceased its
deliberations and listened to the argument of the State's
attorney in the other case and immediately at the close
of that argument agreed upon their verdict and returned
it into court. A new trial was asked because of the
matters set forth in this affidavit. The bill of exceptions
states that while the jury in this cause were closeted in a
jury room for the purpose of considering their verdict,
during the progress of another cause, counsel assisting
the State Attorney in the course of his argument made
frequent reference to the killing of the deceased Barton,
to which references the defendant objected on the ground
that the jury in this cause were in the adjoining room and

43 Fla. 15.

within easy hearing distance of the argument then being made; whereupon the court instructed counsel for the State to refrain from further reference to this cause, and immediately upon the conclusion of the argument objected to, the jury in this cause returned into the court with their verdict. If it be conceded that the affidavit of the juror was competent to prove the matter set forth therein to impeach the verdict of the jury, the matters so set forth, in view of other facts disclosed by the bill of exceptions, were insufficient to require the court to grant a new trial. In so far as the illness of the juror is concerned, the affidavit does not show that when the verdict was rendered, or before, he was so ill that he could not give careful and conscientious consideration to the merits of the controversy then pending before him, or that the verdict rendered by him did not express his deliberate conviction of defendant's guilt upon a full and careful consideration and comparison of the evidence. As to the matter of the improper argument of the State's counsel, it appears that it occurred in the presence of the defendant; that defendant objected to it and that as soon as the matter was called to the attention of the court, the attorney was instructed to desist from further argument along that line. The matter was not deemed of sufficient importance by defendant to ask that the jury be recalled and instructed to disregard the argument if they heard it, and no exception was taken in regard thereto. It was probably not anticipated by any one that the jury in the Clemmons case would stop to listen to arguments of counsel in another case. As the court below acted promptly upon the impropriety being called to its attention by instructing the State's counsel to desist from fur-

ther argument along that line, and as no exception was taken to any ruling growing out of this irregularity, this court is not authorized to hold the Circuit Court in error for refusing a new trial because of that irregularity.

VII.　The only other assignment of error not abandoned by failure to argue same is that relating to the ruling refusing a new trial asked for upon the ground that the verdict is not supported by the evidence. It is true that the evidence does not in terms make a case of murder in the third degree, but it is sufficient to sustain a verdict for a higher degree. Under the evidence the jury should have found defendant guilty of murder in the first or second degree, and not of a lower degree of homicide. Under these circumstances the verdict must, under our statute and the previous rulings of this court, be usutained as against a motion for a new trial upon the ground stated. McCoy v. State, 40 Fla. 494, 24 South. Rep. 485; Mobley v. State, 41 Fla. 621, 26 South. Rep. 732; Morrison v. State, 42 Fla. 149, 28 South. Rep. 97.

The judgment is affirmed.