THE STATE OF CONNECTICUT *vs.* PETER RUBAKA ET AL.

First Judicial District, Hartford, March Term, 1909.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

The failure of the trial court to cause the testimony of English-speaking witnesses to be translated into the language which the accused understands is not a denial of the latter's constitutional right to be confronted by the witnesses against him.

During the selection of the jury in a capital case the accused, without the knowledge of the court and while in charge of an officer, was absent in the toilet room two or three minutes. *Held* that this was a trivial ground on which to base a motion in arrest of judgment.

The shirt and trousers worn by one accused of murder at the time of his arrest shortly after the homicide, are admissible in evidence against him, in connection with testimony that at that time there were human blood spots upon them.

Where two persons are jointly indicted and tried together, and each testifies as a witness, each becomes not only a witness in his own behalf but in behalf of his associate, in so far as his testimony affects the latter; and therefore the declarations of such a wit-

The State *v.* Rubaka.

ness, in contradiction of material statements in his testimony, are admissible to discredit him not only as a witness for himself but as a witness for his colleague, in so far as, but no farther than, he may have testified in his behalf.

A copy of the requests to charge prepared by counsel for one of the accused, was inadvertently given to the jury with other papers, and led to an inquiry by them as to whether it correctly interpreted the law as to premeditation. The court informed the jury that the paper was no part of the record, that it had gone to them by mistake, and that they were to take their law on that subject from the court, giving them further instructions to which no exception was taken. *Held* that these facts furnished no ground for a motion in arrest of judgment.

It is competent for the judges of such of our courts as employ official stenographers to cause portions of their notes of the evidence to be read over to the jury in open court, if requested by them, either during the trial or after the cause has been submitted, and also to cause typewritten transcripts of desired portions of the testimony, or even the whole of it, to be submitted to the jury if they so request. The exercise of this power must necessarily rest, to a great extent, in the discretion of the trial judge. Whether there is reasonable ground for the jury's request for the evidence; whether the transcript contains matter which ought not to be submitted to the jury, or is of doubtful accuracy; whether certain parts of the testimony can be read or copies of it submitted without too great inconvenience or loss of time in the trial, and in such a manner as will, with fairness to all parties, furnish the desired information to the jury, are questions for the trial judge.

An appeal to this court by one under sentence of death necessarily operates as a *supersedeas* of the execution of such sentence until the final determination of such appeal.

Argued March 2d—decided April 14th, 1909.

INDICTMENT for murder in the first degree, brought to the Superior Court in Hartford County and tried to the jury before *Case, J.;* verdict and judgment of guilty, and appeal by each of the accused. *Error and new trial ordered.*

*John A. Toohey,* for the appellant Rubaka (one of the accused).

*John W. Coogan,* for the appellant Saviak (one of the accused).

*Hugh M. Alcorn*, State's Attorney, for the appellee (the State).

HALL, J. The first count of the indictment charges the defendants jointly, as principals, with the crime of murder in the first degree. The second count charges Saviak as principal and Rubaka as an accessory before the fact. They were tried together. The State claimed to have proved that Saviak did the act of killing and that Rubaka was present aiding and abetting him. Each was found guilty of murder in the first degree, and each appealed.

One of the errors assigned is that during the trial several witnesses for the State testified in English, which language Saviak does not understand, and that the court did not direct such testimony to be translated to him.

There was in this no denial of the constitutional right of Saviak to be confronted by the witnesses against him. His counsel understood English. It does not appear that he was unable to communicate with his client, nor that Saviak did not learn what these witnesses testified to, nor that either Saviak or his counsel either needed or desired to have the testimony of these witnesses translated to Saviak as it was given.

While the jurors to make up the panel were being examined and selected, the accused Rubaka, without the knowledge of the court, went, in charge of a court officer, to the toilet room and was absent two or three minutes, during which time the court proceedings were not suspended. This circumstance was properly held to be an insufficient ground for a motion in arrest of judgment. It is too trivial for serious consideration. The accused absented himself voluntarily and secretly. He was denied no right. He manifestly sustained no injury from his momentary absence.

The shirt and trousers worn by Saviak when he was arrested shortly after the homicide, were properly received

as evidence, in connection with the testimony that there were human blood spots upon them at the time of the arrest.

The finding states that each of the accused testified as a witness; that their respective claims upon the evidence were that Rubaka denied that he was present at the actual killing; denied that he had encouraged or counseled the killing, and claimed that, believing himself in danger, he had called to Saviak for assistance; that Saviak denied preparation or intent to kill, and claimed that he acted upon Rubaka's call for help; that both denied that Rubaka called out to Saviak, as the State claimed he did: "Come out here, we will kill this Polock"; that on rebuttal the State offered as a witness one Henry S. Hart, a police sergeant, who testified to a conversation he had with Rubaka the day after the homicide; that "it was conceded that proper foundation had been laid for the introduction of Rubaka's statement so far as it affected himself, but that Saviak's counsel objected to the testimony so far as it affected Saviak"; that the objection was overruled, and that "the statements of Rubaka in this regard dealt not only with his own actions, but with those of Saviak, at the time of the homicide."

The question of the admissibility of the declarations of Rubaka to the witness Hart is not very clearly presented by the finding. We have before us neither the testimony of Rubaka, nor a statement of the facts testified to by him which the declarations were offered to contradict, nor the testimony of Hart, nor a statement of the declarations which he testified Rubaka made to him.

The accused were jointly charged and tried together, and each testified as a witness. As in the case of such testimony by joint defendants in a civil trial, each defendant became not only a witness in his own behalf, but in behalf of his codefendant, in so far as his testimony could have that effect. The declarations of such a witness in

contradiction of material statements in his testimony are admissible to discredit him as a witness for himself and as a witness in behalf of his codefendant. It follows that the declarations of Rubaka inconsistent with his testimony, were admissible not only to discredit him as a witness in his own behalf, but to discredit him as a witness for Saviak, in so far as, and no further than, he testified in behalf of Saviak. We cannot say from the record before us that the court erred in overruling the objection of Saviak's counsel.

After the jury had retired to consider the case they returned, and through their foreman said to the court: "We would like to ask the court if this paper is a correct interpretation of the law on premeditation?" at the same time submitting to the court a copy of written requests to charge, which had inadvertently been given to the jury with other papers, the original of which had been submitted to the court by Rubaka's counsel. The court informed the jury that the paper was no part of the record; that it was an error to place it in the hands of the jury; and that the jury would take their law upon the subject from what the court had charged them. In response to an inquiry by the foreman, the court thereupon instructed the jury further upon the subject of premeditation, and no exception was taken to such charge. These facts were made one of the grounds of a motion in arrest of judgment filed by each of the accused.

There was no error in holding that these facts were insufficient for that purpose. The paper which was thus, by mistake, handed to the jury, was entitled "Requests for Charge, By John A. Toohey, Attorney for Peter Rubaka." It contained six paragraphs of from two to six lines each, each containing a statement of what was claimed to be the law regarding an aider or abettor of a crime, with an authority, and in one case two, cited after each paragraph. Rubaka had no cause to complain that the jury had read

his own claims of law. The paper showed upon its face that its statements did not apply to Saviak, and he could not have been injured from the fact that they were favorable to Rubaka. And further, any error in permitting the paper to go to the jury was fully cured by the remarks and action of the trial judge.

During the trial of the case the State offered evidence that just before the killing Rubaka called out to Saviak, "Come out here, we will kill this Polock." Each defendant denied that Rubaka called out in these words, but claimed that Rubaka's call was for aid, when he was in danger, and that Saviak acted in response to such call for assistance. While they had the case under consideration the jury returned to the court room, and the foreman made this request and statement to the court: "We ask for a copy of the testimony because in the minds of some of the jurors it was not clear as to who called out 'Come here and we will kill the Polocks.'" The finding states that "the court declined to furnish the jury with a copy of the stenographer's transcript, and returned them to their room pending consultation with counsel as to whether by mutual consent certain specified portions of the testimony might be read by the stenographer to the jury. After consultation between all the counsel, they were unable to agree as to what portions of the testimony should be read to the jury. The jury were then recalled and the following occurred: '*The Court:* If the court thoroughly understood the purport of your suggestion, Mr. Foreman, it was one that involves going over the printed record of the case, the transcript of the testimony, and making selections of certain parts of it as to what certain witnesses said. *Mr. Steele* (the foreman): What one or more witnesses may have said in regard to that matter. *The Court:* The court is without authority to give you the notes to make your investigation in the jury room, and it is equally without authority to have the printed testimony examined for the

purpose of making those selections, in the absence of an agreement of all the counsel, and that agreement not being forthcoming, the court will have to send you back and not grant your request, and leave you to your own recollections as to what was said in that regard." Saviak makes this action of the trial court a reason of appeal. Rubaka does not.

From this language of the finding and from the briefs of counsel, there seems to be a question as to just what information the jury meant to ask for by this request. Some of the counsel claim that the jury desired to ascertain what witness or witnesses had testified that Rubaka so called out. Some parts of the finding indicate that it was understood that the jury wished to learn what the evidence was as to the language used by Rubaka in calling out. As we read the finding, what was not clear in the minds of some of the jurors was, not what particular witness or witnesses had testified that Rubaka had so called out, nor what the language of the person was, who called out, but who the person was who so called out. The finding seems to say that it was for the purpose of ascertaining "*who called out*" that the foreman said the jury wanted "a copy of the testimony." They would hardly have needed a copy of the testimony to learn what witness had testified that Rubaka had so called out.

If the jury only wished to learn who the person was who called out, it would have been entirely proper for the court to have informed them—if such was the case, and such in effect is the finding—that it was admitted that it was Rubaka, or that the evidence in behalf of the State and in behalf of both the accused was that it was Rubaka. But it is not entirely clear that this was all the information the jury desired. The foreman asked for a copy of the testimony or the testimony of one or more witnesses "in regard to that matter," and whether they merely desired to learn who it was that called out, or to learn what particular witness

or witnesses had testified that Rubaka had called out in the language repeated by the foreman, or to learn what the testimony of the different witnesses was, as to the language of Rubaka in calling out, the court was not "without authority" to either have the stenographer's notes read to them, or to have a copy of the whole or parts of such notes of the testimony furnished to them.

Section 523 of the General Statutes requires the official stenographer to attend the sessions of court, and to make accurate shorthand reports of all proceedings, except the arguments of counsel. Section 524 requires every official stenographer to furnish to the court, the State's Attorney, or to any party of record, when requested, a transcript of his official notes, or such portion thereof as may be desired. Section 695 makes an exemplified transcript of the notes of the official stenographer prima facie a correct statement of the testimony, and a part of the official record in the cause in which such notes are made.

The finding indicates that there was a typewritten transcript of the testimony in court. Presumably the official stenographer was present. Stenographers are employed in courts to facilitate the work of the trial, and especially the taking of testimony, and to enable the court, counsel and parties to have access, both for present and future use, to a correct statement of the evidence. It is a common and proper practice for courts to require the official stenographer to read his shorthand notes in order to settle disputes arising during trials, as to what witnesses have testified, and for other purposes. *Alexander Brothers* v. *Gardiner*, 14 R. I. 15. One of the purposes of requiring a transcript of the official notes of the stenographer to be furnished is to enable the court or counsel to state accurately the language of witnesses, whenever it is proper, as it frequently is, for either of them to refer to it during the trial. It is not questioned but that under the statutes referred to, the court, in reaching its final decision upon

questions of fact, may use a transcript of the stenographer's notes as a statement of the evidence. Why should the jury be denied this aid and be compelled to rely entirely upon their recollection of the testimony? If jurors are to decide cases, as their oaths require them to, according to the evidence before them, or according to the evidence given them in court, why should they not, when they have forgotten a material part of such evidence, be permitted to make use of an available and generally most reliable means of recalling it? It is the policy of the law that every tribunal for the trial of civil or criminal causes should have open to it the best legitimate means of acquiring such knowledge of the law and facts as will enable it to decide the cases before it fairly and intelligently. No good reason occurs to us why a jury may not, at times during the trial or during the consideration of cases before them, be permitted either to have read to them parts of the official court stenographer's shorthand notes of the testimony, or have furnished to them typewritten transcripts of such notes. We hold that under our law since the enactment of the statutes above cited, it has been within the power of the trial judges of those courts having official stenographers, or having the power to call in a stenographer whenever in the interests of justice he finds it necessary, to direct such stenographer, during the trial of cases, to read in open court portions of his shorthand notes for the benefit of the court or the jury or counsel; and to either direct the stenographer to read to the jury, in open court, after the case has been submitted to the jury, such portions of the testimony as the jury may request to have read to them, or to cause to be furnished to them typewritten transcripts of such portions of the testimony; or in case a typewritten transcript of the entire testimony has been made, to submit such transcript to the jury, if they request it.

The jury are not, however, required to regard such notes or transcripts as conclusively correct.

This entire matter of causing the stenographer's notes to be so read, and of submitting copies of the whole or portions of them to the jury, must rest, to a great extent, in the discretion of the trial judge. Whether there is reasonable ground for the jury's request for the evidence; whether the transcript made contains matter which ought not to be submitted to the jury, or is of doubtful accuracy; whether certain parts of the testimony can be read or copies of it submitted, without too great inconvenience or loss of time in the trial of the case, and in such a manner as will, with fairness to all parties, furnish the desired information to the jury,—are questions for the determination of the trial judge. We have not a transcript of the evidence before us, nor has the trial court either decided, or found facts which show, that the granting of the request of the jury in this case would have involved too great labor or too great delay in the trial. The decision of the trial court was that the court was without authority to cause the desired information to be furnished the jury. In this there was error.

The accused were on the 17th of December, 1908, sentenced to be executed on the 9th of March, 1909. Their respective appeals were taken to the March term, 1909, of this court, and were argued on the 2d day of March, 1909. Section 799 of the General Statutes provides that when an appeal is properly taken to this court in a civil action execution shall be stayed until the final determination of the cause. Section 1521 gives a right of appeal to this court, to any defendant in a criminal prosecution, "in the same manner, and with the same effect as in civil actions." Section 1522 as amended by chapter 70 of the Public Acts of 1905, p. 295, provides that when, by reason of the pendency of such an appeal from a judgment rendered upon a conviction for any offense punishable by death, such judgment shall not be executed at the time assigned therefor, and shall not be reversed or no error

The State *v.* Rubaka.

shall be found, this court, after the decision of such appeal, shall appoint a time for the execution of such judgment.

It is unnecessary to decide whether appeals from sentences not capital operate as a *supersedeas*. Appeals from death sentences which, at the time fixed for the execution, have not been decided, must *ex necessitate rei* so operate. This is fully recognized by § 1522 above referred to.*

There is error and a new trial is ordered upon each appeal.

In this opinion the other judges concurred.

---

\* To avoid any possible misconstruction of the law in this respect by those charged with the duty of executing capital sentences, and as it appeared that the appeals in this case would probably not be finally determined until after the day fixed for the execution of the sentences, this court issued the following order:—

State
    *vs.*
Peter Rubaka and
John Zawodzianczek
alias John Saviak.

SUPREME COURT OF ERRORS,
HARTFORD COUNTY,
FIRST JUDICIAL DISTRICT,
MARCH TERM, 1909.

Whereas an appeal to this court by one under sentence of death operates as a *supersedeas* of the execution of such sentence until the final determination of such appeal:

And whereas the above entitled cause has been heard and remains pending for determination, and it is probable that final judgment will not be rendered therein until after the date fixed for the execution of sentence in the judgment of the Superior Court, it is deemed proper to notify the warden of the state prison of the probability of such further delay; and therefore:

It is ordered that an attested copy hereof, certified by the clerk of this court, be left with said warden by the sheriff of Hartford county or his deputy on or before the fifth day of March, 1909.

By order of court,
GEORGE A. CONANT, clerk.