A. IRVING LOWMAN AND FLOYD BRASWELL, *Plaintiffs in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Opinion Filed June 10, 1920.

Petition for Rehearing Denied July 5, 1920.

1. Where the evidence does not expressly locate the crime as having been committed in the county charged in the indictment, but there are in the evidence references to various localities and landmarks at or near the scene of the crime, known by or probably familiar to the jury, and from which they may have reasonably concluded that the offense was committed in the county alleged, it is sufficient proof of venue.

2. Venue need not be established beyond a reasonable doubt. If the evidence raises a violent presumption that the offense was committed within the county, or if the evidence refers to localities and landmarks at or near the scene of the alleged offense, known or probably familiar to the jury, from which they may reasonably infer that the offense was committed in the county, it will be sufficient.

3. To render dying declarations admissible, the judge must be fully satisfied that the deceased declarant, at the time of their utterance, knew that his death was imminent and inevitable, and that he entertained no hope of recovery. This absence of all hope of recovery and appreciation by the deceased of his speedy and inevitable death is a preliminary foundation that must always be laid to make such declarations admissible. It is a mixed question of law and fact for the judge to decide before permitting the introduction of the declaration itself. It is not necessary that such preliminary test should consist of express utterances, but it may be gathered from any circumstances or from all the circumstances of the case.

4. In the trial for a capital offense if an adult defendant unobserved by the court or its officers voluntarily goes into a

room adjoining the court room for purposes of his own and remains for a very few moments while a witness for the State is being examined, or while a proposed juror is being examined on his *voir dire*, the defendant being represented by counsel, such temporary and voluntary absence from the court room during the progress of the trial is not a violation of the defendant's organic or statutory rights, and will not cause a reversal of a judgment of conviction that is amply supported by competent evidence, and it does not appear that the defendant could have been harmed or prejudiced by his voluntary absence for such a brief time during the trial.

A writ of error to the Circuit Court for Hernando County; W. S. Bullock, Judge.

Judgment affirmed.

*Thomas Palmer, George C. Martin* and *F. B. Coogler,* for Plaintiffs in Error;

*Van C. Swearingen,* Attorney General, and *D. Stuart Gillis,* Assistant, for the State.

WHITFIELD, J.—Upon an indictment charging murder in the first degree in Hernando County, Florida, by fatally shooting Ben. T. Harrell, "unlawfully and from a premeditated design to effect the death of the said Ben T. Harrell," the plaintiffs in error were convicted of murder in the first degree with a recommendation to mercy, and took writ of error to a judgment imposing a life sentence.

It is contended here that "no venue whatever" was proven; that the court erred in admitting in evidence "the so-called dying declaration of Ben T. Harrell," the deceased, and that the motion for new trial was erron-

eously denied in that it was shown "that the defendants A. Irving Lowman and Floyd Braswell were absent from the court room and out of the hearing of the trial of said cause during a material part of the proceeding of said cause."

Where the evidence does not expressly locate the crime as having been committed in the county charged in the indictment, but there are in the evidence references to various localities and landmarks at or near the scene of the crime, known by or probably familiar to the jury, and from which they may have reasonably concluded that the offense was committed in the county alleged, it is sufficient proof of venue. Duncan v. State, 29 Fla. 439, 10 South. Rep. 815; McCune v. State, 42 Fla. 192, 27 South. Rep. 867; Leslie v. State ,35 Fla. 184, 17 South. Rep. 559; Smith v. State, 29 Fla. 408, 10 South. Rep. 894; Andrews v. State 21, Fla. 598; Bryan v. State, 19 Fla. 864; Hopkins v. State, 52 Fla. 39, 42 South. Rep. 52; 16 C. J. 769.

If the proof of venue does not come within the rule above announced, it will be insufficient. Warrace v. State, 27 Fla. 362, 8 South. Rep. 748; McKinnie v. State, 44 Fla. 143, 32 South. Rep. 786; Smith v. State, 42 Fla. 236, 27 South. Rep. 868; Cook v. State, 20 Fla. 802; Robinson v. State, 20 Fla. 804; Evans v. State, 17 Fla. 192; McCoy v. State, 17 Fla. 193.

Venue need not be established beyond a reasonable doubt. If the evidence raises a violent presumption that the offense was committed within the county, or if the evidence refers to localities and landmarks at or near the scene of the alleged offense, known or probably familiar to the jury, from which they may reasonably infer that the offense was committed in the county, it will be suffi-

cient. Warrace v. State, 27 Fla. 362, 8 South. Rep. 748; Andrews v. State, 21 Fla. 598.

In this case there is testimony that the homicide was committed at a place or town called Istachatta, which the trial court and the jury must have known and this court knows is in Hernando County. See Howard v. State, 172 Ala. 402, 55 South. Rep. 255, 34 L. R. A. (N. S.) 990; Dupree v. State, 148 Ala. 620, 42 South. Rep. 1004; 16 C. J. 770; Commonwealth v. Kaiser, 184 Pa. St. 493, 39 Atl. Rep. 299. It is not material whether Istachatta be incorporated or not; it is a village and a station on a railroad, with a postoffice, in Hernando County, Florida. See 15 R. C. L. 1083, 1085, 1118; Central Railroad & Banking Co. v. Gamble, 77 Ga. 584, 3 S. E. Rep. 287; Smitha v. Flournoy, 47 Ala. 345. The venue was sufficiently shown. Leslie v. State, 35 Fla. 184, 17 South Rep. 559.

A witness for the State testified that he saw the deceased the morning after he was shot, and that "I asked him if he didn't think he was getting along pretty well, and would get over it, and would be all right in a short time, and he said, 'No, they have got me. I can't get over it.'" "I asked him again; perhaps he wasn't as badly wounded as he thought he was, and he repeated about the same, he first said: he says, 'They have got me; I can't get over it; I can't recover.'" "Did he state to you in so many words, or to that effect that he was expecting immediate death—right now? A. No; he didn't say that in those words; no sir. Q. Did he say anything to you that he himself had no hope of recovery? A. He didn't use those words. Q. He simply said, 'They have got me?' A. Yes. Q. And 'I don't expect to get well;' 'I don't expect to recover?' A. 'I can't live.' Q. 'I can't

live?" A. He used on one occasion. Q. But did he say a single word that he expected the result to be immediate? A. He didn't say that."

"In the case of Lester v. State, 37 Fla. 382, 20 South. Rep. 232, it was held that: 'To render dying declarations admissible, the judge must be fully satisfied that the deceased declarant, at the time of their utterance, knew that his death was imminent and inevitable, and that he entertained no hope of recovery. This absence of all hope of recovery, and appreciation by the deceased of his speedy and inevitable death is a preliminary foundation that must always be laid to make such declarations admissible. It is a mixed question of law and fact for the judge to decide before permitting the introduction of the declaration itself. It is not necessary that such preliminary test should consist of express utterances, but it may be gathered from any circumstances or from all the circumstances of the case.' Dixon v. State, 13 Fla. 636; Richard v. State, 42 Fla. 528, 29 South. Rep. 413; Clemmons v. State, 43 Fla. 200, 30 South. Rep. 699; Gardner v. State, 55 Fla. 25, 45 South. Rep. 1028."

Guided by these authorities and the cases therein approvingly cited, we do not think the court erred in admitting the declarations of the deceased in this case. Copeland v. State, 58 Fla. 26, 50 South. Rep. 621; Newton v. State, 51 Fla. 82, 41 South. Rep. 19; Richard v. State, 42 Fla. 528, 29 South. Rep. 413; Clemmons v. State, 43 Fla. 200, 30 South. Rep. 699.

Grounds of the motion for new trial assert that the defendants were at different times each voluntarily absent from the court room for a few minutes during the trial and affidavits in support of the assertions were filed. In denying the motion for new trial the court must have

regarded the asserted brief voluntary absences of the
defendants from the court room during the trial as not
harmful to the defendants, or else that he held the affiants
to be mistaken in a matter that he was cognizant of. It
is suggested for the State that the matter cannot properly
be presented by affidavits after the trial. Van Houton v.
People, 22 Colo. 53, 57, 43 P. 137. If the trial court had
observed or had been advised of an absence of the defend-
ants or either of them from the court room during the
trial, he doubtless would have made the bill of exceptions
so state as a part of the proceedings *in pais*. In this case
we will not hold that the matter was not properly
presented by motion for new trial supported by affidavits.
The State presented no counter affidavits.

An affidavit of A. Irving Lowman states "that during
the trial of said case and while the jury was being
examined as to its qualifications to try said cause, and
while a prospective juror was being examined as to his
qualifications to sit in said cause, that this affiant being
anxious to learn something if possible concerning the
juror being so examined and without realizing that he
was violating any rule of said court, this affiant got up
from his seat back of his counsel and inside of the bar
rail of said court, and without saying anything to any
of his attorneys, walked out of the northeast door of the
court room to make such inquiry. Although this affiant
does know that the examination of said juror was going
on as he, this affiant, passed outside of said door; that
this affiant was absent from said court room some five or
ten minutes, the exact time of his absence this affiant
does not know; that upon the return of this affiant to the
court room the said examination had evidently ceased as
there was no questions being asked this particular juror.
This affiant further says on oath that this particular

juror, who was examined as to his qualifications in the absence of this affiant, was accepted on said jury and was one of the twelve jurors that tried this affiant and his co-defendant and found them guilty of murder in the first degree as above set forth."

By affidavit J. C. Davant stated "that he was in attendance upon the said court during the present week while the trial of the case of the State of Florida vs. A. Irving Lowman and Floyd Braswell charged with the murder of Ben T. Harrell was being tried; that he was especially present in said court while the jury to try said case was being examined as to their qualifications for the trial of the same; that he noticed particularly while one juror was being examined as to his qualifications and the same was taking place in the progress of said trial, the defendant A. Irving Lowman got up from his seat in the court room and went out of the room and was gone several minutes before returning to the court room, and while said defendant A. Irving Lowman was absent from the court room and beyond the hearing of the proceedings then going on, the examination of said juror on his qualifications continued, and this affiant knows that a large part of the examination of said juror took place in the absence of the said defendant A. Irving Lowman."

Floyd Braswell by affidavit stated: "That he is suffering, and has been suffering for a considerable time, with a very bad case of kidney trouble; that at times said disease is very acute and necessitates his going to a toilet and relieving himself every few minutes, and that it is impossible for this affiant to avoid so doing. That during the trial of the above named cause, in which this affiant was a defendant as above set forth, he many times had to thus go out of the court room to relieve himself; that

he particularly remembers on one occasion while a State witness was being examined by the State's attorney in said case, this affiant was compelled to leave the court room and relieve himself as aforesaid; that not realizing that he was violating any of the rules of the court, and without speaking to his counsel or any one else, he got up from his place inside the bar rail of said court and went out of the court room through a door near the northeast corner of said court room, which door was closed behind him; that he from that place went through a hall to the toilet in the northwest corner of said building, but entirely outside of and beyond the court room; that he was there for several minutes and after relieving himself returned to the court room and resumed his seat."

An affidavit by Aaron H. Ryals states "that during the said trial of these defendants in said cause and in said court during the present week, and while a witness for the State was being examined, this affiant saw the defendant Floyd Braswell get up from his seat inside of the bar rail of said court and walk out of the court room to the north of the court building and saw a door through which he went out close behind him. That this affiant noticed that the examination of said witness was not stopped upon the absence of said defendant from the court room as aforesaid, but such examination of said witness continued right on in the absence of said defendant Floyd Braswell; that the said Floyd Braswell was absent from the room several minutes and during all of the time that he was so absent the examination of said State witness was continued by the State's attorney."

As the affidavits were not controverted, and as the motion for new trial was overruled without stating the

reasons therefor, it will be assumed that the court regarded the asserted absences of the defendants from the court room for a few minutes during the trial as not harmful to the defendants, rather than that the court held the affidavits to be untrue as to the absence from the court room of the defendants as stated. Was the voluntary absence of the defendants from the court room under the circumstances stated harmful error, or was it such a violation of law as to require a reversal of the judgment of conviction fully sustaned by the evidence?

The Constitution ordains "In all criminal prosecutions the accused shall have the right to a speedy and public trial, by an impartial jury, in the county where the crime was committed, and shall be heard by himself, or counsel, or both, to demand the nature and cause of the accusation against him, to meet the witnesses against him face to face, and have compulsory process for the attendance of witnesses in his favor, and shall be furnished with a copy of the indictment against him." Sec. 11, Declaration of Rights.

Section 3977, General Statutes, 1906, provides: "No person prosecuted for a felony shall be tried unless personally present during the trial."

Chapter 6223, Acts of 1911, is as follows: "No judgment shall be set aside or reversed, or new trial granted by any court of the State of Florida in any cause, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence or for error as to any matter of pleading or procedure, unless in the opinion of the court to which application is made, after an examination of the entire case, it shall appear that the error complained of has resulted in a miscarriage of justice. This Act shall be liberally construed."

In Gladden v. State, 12 Fla. 562, text 577, this court by MR. JUSTICE WESTCOTT, said: "We will consider one" of the grounds presented in the motion for new trial "which was the absence of the prisoner from the court for some minutes three several times during the progress of the trial—at one time when one of the State witnesses was being examined, at another time when a witness for the defense was being examined, and a third time during the argument of counsel. The absence was voluntary, but without any express waiver of his right to be present.

"It is unnecessary for us to determine whether the prisoner can waive his right to be present during the trial, or whether a simple voluntary absence upon his part can be held to be a waiver of his constitutional right, and authorize the State to proceed in his absence. These questions have been settled in this State.

"This court has laid down the rule very broadly, and has, perhaps, extended it beyond the views of the courts of some other States.

"In Holton vs. State, 2 Fla. 500, the court say: 'During the trial of a capital case (the whole trial) the prisoner has a right to be and *must be present. No steps can be taken by the court in the trial of the cause in his absence. The prisoner charged must be present in court to make his objections to any and every step* that may be taken which he may deem illegal.' "

In Irvin v. State, 19 Fla. 872, text 894, in which JUDGE WESTCOTT participated, it is said: "We think the rule should be extended no further."

In Morey v. State, 72 Fla. 45, 72 South. Rep 490, it is said: "Upon the trial of an indictment charging the defendant with the commission of a capital offense, it is

important that the defendant should be present at every stage of the trial, including the argument of counsel."

In this case the charge was a capital offense. The defendants had been out on bail and apparently were not in the actual custody of an officer during the trial. The momentary absences from the court room were voluntary, and there is nothing to indicate that any harm could have resulted to the defendants or either of them by the voluntary absence of the defendant Lowman from the court room for a few minutes during the examination of a juror as to his qualifications or by the voluntary absence of the defendant Braswell from the court room for a few minutes during the examination of a State witness.

The Constitution secures to a defendant a right to "an impartial trial" anl "to meet the witnesses against him face to face," but it does not expressly require a defendant to be present during the entire time of the trial. A rule of procedure enforced by the courts has required the personal presence of the defendant during the whole period of the trial as stated in the Molton and Morey cases, *supra*. See Sherrod v. State, 93 Miss. 774, 47 South. Rep. 554; State v. Kelly, 97 N. C. 404, 2 S. E. Rep. 185.

The courts hold that the general right of the defendant to be present at every material step taken in his trial for a capital offense cannot be waived by him. In some States statutes authorize the defendant to waive his right to be present at least at times during his trial, even for a capital offense. And such statutes are sustained since there are no constitutional provisions with which they conflict. Thomas v. State, 117 Miss. 532, 78 South. Rep. 147; 16 C. J. 817. See also Davidson v. State, 198 Ark. 191, 158 S. W. Rep. 1103.

A temporary absence from the court room, for a short time during the trial, even in a capital case, has been held not to be such an invasion of defendant's substantial rights as to be ground for a reversal or for a new trial. State v. Rubaka, 82 Conn. 59, 72 Atl. Rep. 566; 16 C. J. 818 and notes. See also State v. Gonce, 87 Mo. 627; 8 R. C. L. 91; Diax v. United States, 223 U. S. 442; 32 Sup. Ct. Rep. 250. See also Russel v. State, 65 Fla. 312, 61 South. Rep. 624; Hite v. Commonwealth, 14 Ky. Law 308, 20 S. W. Rep. 217; Meece v. Commonwealth, 78 Ky. 586; Howard v. State of Kentucky, 200 U. S. 164, text 175, 26 Sup. Ct. Rep. 189; Frank v. Mangum, 237 U. S. 309 35 Sup. Ct. Rep. 582; State v. Slorah, — Mo., — 106 Atl. Rep. 768, 4 A. L. R. 1256; Frank v. State, 142 Ga. 741, 83 S. E. Rep. 645; Ann. Cas. 1913C 1146 Notes.

The statute above quoted to the effect no persor charged with a felony shall be tried unless personally present during the trial, is for the benefit of the defendant, and the right so given may be waived. See People v. Bragle, 88 N. Y. 585; Cawthon v. State, 119 Ga. 395, 46 S. E. Rep. 897; People v. Bush, 68 Cal. 623, 10 Pac. Rep. 169.

As the defendants were represented by counsel and were personally present at all other stages of the trial, their voluntary absence for a few moments from the court room should not under the circumstances render the trial invalid, even if erroneous; and under the statute of 1911, above quoted, the judgment should not be reversed or a new trial granted for an error of procedure that is harmless on the evidence where no right secured by the constitution that could not be waived has been invaded by the prosecution. There is no claim that the defendants

did not have a jury of their choice under the law or that the trial was in every way fair and impartial.

The evidence amply sustains the verdict and there is no suggestion of the possibility of harm to the defendants or either of them by their own voluntary and momentary absence from the court room during the trial. State v. Rubaka, 82 Conn. 59, 72 Atl. Rep. 566.

The charge in this case is a capital offense, but the Constitution does not expressly require the presence of the defendants in the court room during the whole time of their trial for even a capital offense, and as the defendants met the witnesses against them face to face and had an impartial jury, and as the absence of the defendants from the court room was voluntary and for only a few moments, and as no harm to either of them seems possible and no harm is claimed to have resulted to either of them from their voluntary absence, the constitutional requirements have been complied with. The statutory right to be personally present during the trial has not been violated though the right may have been waived by the voluntary act of the defendants; and the statute forbidding new trials for harmless errors should be applied when no fundamental rights are thereby violated, the evidence fully sustaining the verdict. See Doyle v. Commonwealth (Ky.), 37 S. W. Rep. 153.

In this case there was the voluntary act of a normal man in going from the court room where he was being tried for the crime of murder, into another room in the building and there remaining a few minutes for purposes of his own desire or convenience, while the juror was being examined on his *voii dire*, or while a witness for the State was being examined, the defendant being represented by counsel, when it does not appear and is not

claimed that any disadvantage or harm to the defendant could have resulted from his voluntary and temporary absence from the court room. To hold that this is a denial to the defendant of his organic rights "to be heard by himself or counsel, or both, to demand the nature and cause of the accusation against him, to meet the witnesses against.him face to face" and not to "be deprived of life or liberty without due process of law" and to "the equal protection of the laws," or a denial of the defendant's statutory or common law right to be personally present "during the trial" or at every stage of or step taken in his trial for a felony, is to put vain technicalities above the substantial requirements of justice and security to the defendant, and to impair the integrity and power of the courts in administering the law and in securing to the defendant all of his rights in the premises.

Judgment affirmed.

WEST, J., concurs.

ELLIS, J., concurs in the conclusion.

BROWNE, C. J. AND TAYLOR, J., dissent on the question of absence from court room of the defendants in a trial for a capital offense.

BROWNE, C. J., dissenting. I dissent and state my reasons:

During the progress of the trial the defendant A. Irving Lowman left the court room while a prospective juror was being examined as to his qualifications, for the purpose of ascertaining something, if possible, concerning

the juror who was being examined, and when he returned the examination had ceased. He was absent from five to ten minutes.

Floyd Braswell for personal reasons left the court room on several occasions; once while a State's witness was being examined by the State's attorney.

If there is any question that was supposed to be settled in this State by early, well considered and an unbroken line of decisions, it is that "during the trial of a capital case (the whole trial), the prisoner has a right to be, *and must be present*—no step can be taken by the court in the trial of the cause in his absence."

The earliest case is that of Holton v. State, 2 Fla. 476, where there is a very full discussion of the question. I quote in part from that decision. "While the justice of the rule here asserted is admitted, and an adherence to its principles conceded, it is of equal importance that the rights of the accused should be protected and preserved, and the essential forms of law prescribed for the mode of conducting the ascertainment of his guilt should be carefully observed and followed. A departure from them could not fail to produce difficulties and doubts. A recognition of a departure in one case, might lead to the adoption of another; and finally, those barriers, *which are guarantees for the regular and impartial* conducting of criminal cases, might be frittered away, and possibly eventuate in gross injustice. It is much easier to require the observance of the mandates of the law, than to determine in what cases they may be safely dispensed with. It is, therefore, more proper and more consonant to reason and justice to require a substantial adherence, than to suffer innovations upon the known and positive rules prescribed by law for the regular conducting of

causes. The justice of these grounds is as clear and apparent as those which are founded on principles of humanity, by which the administration of criminal law has been marked, and *which declare that the accused stands on all his rights,* and waives nothing which is irregular, and more especially so where life is in the question."

"But there was another very important, settled and well established principle of criminal law violated, we think, by this proceeding; which is, that *during the trial of a capital case (the whole trial)* the prisoner *has a right to be, and must be* present—no step can be taken by the court in the trial of the cause in his absence. This results from the humanity of the law and the tender regard it has for human life; which forbids that any proceedings shall take place in the trial of such a cause unless the prisoner charged is present in court, to make his objections to any and every step that may be taken in it which he may deem illegal, and to do whatever else he may or can legally and properly do in his own defense. Suppose that after the testimony has been taken the prisoner escapes, or becomes sick, and is unable to be brought into court, can the jury render a verdict? Suppose he escapes or is taken sick, and is thus disabled after the verdict has been received, can judgment be rendered? If he were to escape or become sick, and unable to remain in court while the testimony is being taken, or the charge is being given, would the cause proceed?"

The opinion in the instant case implies that there was no invasion of the prisoner's constitutional rights, but merely of a rule of procedure.

The Holton case, *supra,* treated it as an *invasion of the constitutional right of an impartial trial,* and I repeat

3—Vol. 80

for emphasis a portion of the opinion: *"A recognition of a departure in one case, might lead to the adoption of another; and finally, those barriers, which are guaran- tees for the regular and impartial conducting of criminal cases, might be frittered away, and possibly eventuate in gross injustice. It is much easier to require the obser- vance of the law, than to determine in what cases they may be safely dispensed with."*

Then came Mr. Justice Westcott's opinion in Glad- den v. State, 12 Fla. 562, where he said: "We will consider but one of them, which was the absence of the prisoner from the court for some minutes three several times dur- ing the progress of the trial—at one time when one of the State witnesses was being examined, and at another when a witness for the defense was being examined, and a third time during the argument of counsel. The absence was voluntary, but without any express waiver of his right to be present.

"It is unnecessary for us to determine whether the prisoner can waive his right to be present during the trial, *or whether a simple voluntary absence upon his part can be held to be a waiver of his constitutional right, and authorize the State to proceed in his absence.* These questions have been settled in this State.

"This court has laid down the rule very broadly, and has, perhaps, extended it beyond the views of the courts of some other States."

Justice Westcott then quoted part of the passage from Holton. v. State, *supra,* and that it might burn into the minds of those charged with protecting accused persons in their constitutional rights, he placed the quotations in italics.

The circumstances surrounding the absence of the prisoner in the Gladden case are strikingly similar to those in the instant case. Lowman was absent from five to ten minutes. He was absent "three several times," "the absence was voluntary."

The question next came before the court in Irvin v. State, 19 Fla. 872, where the court said:

"The rule is well settled in this State that the prisoner has a right to be, *and must be,* present during the trial of a capital case; that no steps can be taken by the court in the trial of the cause in his absence." Citing Holton v. The State, and Gladden v. The State.

Again the question comes before the court in Adams v. State, 28 Fla., 511. In that case the jury was sent from the court room while the competence of a witness was discussed. The prisoner's counsel proceeded with the discussion for about ten minutes when it was discovered that the prisoner had been taken from the court room with the jury. On the return of the prisoner to the court room, the judge requested his attorney to commence anew his argument so that the same matter could be gone over in the presence of the accused, but counsel refused to do this and the trial proceeded.

In reversing the case upon this ground this court said: "It was early decided in this State, and *has been rigidly adhered to in later decisions;* that the prisoner *has the right, and in fact must be present* during the trial of a capital case, and no steps can be taken by the court in his absence. There is no doubt about the fact that the accused here was taken from the court room and remained out for at least ten minutes during the discussion of the competency of a witness against him. He has the right

to be present and to hear questions of law as well as questions of fact discussed, *and in fact no steps can be taken in the case in his absence. The court must see in capital cases* that the accused is present before any proceedings are taken in the case. The fact that the court directed the argument to be gone over again could not possibly restore the accused to the position of hearing what had already been said in his absence." Citing Holton v. State; Gladden v. State, and Irvin v. State.

The trial judge is charged with the duty of seeing that a prisoner has a fair and impartial trial. In the Holton case this court said that his presence in court during the entire proceeding is one of the guarantees of the "impartial conducting of the criminal cases." The presence of the accused in the court room is one of the things that this court has said that "the court must see." In Lovett v. State, 29 Fla., 356, the rule was again recognized, stated and affirmed. In that case a part of the head note by Mr. Justice Rainey is "It is *indispensable* to a legal conviction of a defendant on trial for murder that he should be personally present in court during the trial."

I have looked in vain for a definition of the word "indispensable" that would justify the conclusion in this case that his right to be present is a "vain technicality"; or that his presence "may be dispensed with for a short time," which is the doctrine of this case.

In Palmquist v. State, 30 Fla., 73, the necessity for the presence of the accused in court during the entire trial was regarded as so essential that it was held that the record must show it.

In the case of Summeralls v. State, 37 Fla. 162, MR. JUSTICE TAYLOR said:

"*It is well-settled by repeated decisions here,* as well as in other States, that in cases of felony the accused must be personally present in court during every stage of his trial from its beginning to and including the final passing of sentence. If it is shown that he was absent during the taking of any essential step in the trial, he cannot be said to have had a trial in due course of law."

Still no qualification of the principle; still no intimation that the right to have an impartial trial, or as MR. JUSTICE TAYLOR puts it, "a trial in due course of law," is a "vain technicality."

Section 6223, Acts of 1911, in no wise affects the matter under consideration in this case. There is no question involved "of the misdirection of the jury," "the improper admission or rejection of evidence" or a "matter of pleading or procedure," but instead there is involved what MR. JUSTICE DOUGLAS said was the *constitutional right to an impartial trial* and what MR. JUSTICE TAYLOR said was "due course of law."

Since the passage of that statute the case of Morey v. State, 72 Fla. 45, was decided by this court, and in an opinion by MR. JUSTICE ELLIS, he reiterates the rule and cites all the authorities where this principle was enunciated, strengthened, elaborated, affirmed and seemingly irrevocably fixed as law of this State, and no attempt was made to invoke the provisions of Chap. 6223 as authority for ignoring the previous decisions. The opinion in the instant case cites Sec. 3977, Gen. Stats., 1906, that, "No person prosecuted for a felony shall be tried unless personally present during the trial." This statute was enacted in 1868, and after the decision in Holton v. State and Gladden v. State, so that these decisions do not rest

upon that statute, or any other statute, but upon a funda-mental constitutional right.

So clear, so positive, so unequivocal is the unbroken line of decisions of this court since the Holton case, in 2 Fla., that the Attorney General begins the discussion of this question with the statement: "The facts being un-controverted it follows, if the question is properly before this court, that *if the rule heretofore announced by this court in the cases cited by counsel is to be adhered to in all its rigidity, the contention must be sustained.*"

There is in this an implied invocation to this court to depart from "the essential forms of law prescribed for the mode of conducting the ascertainment of guilt" of which at the time when the courts were scrupulously careful to guard and protect constitutional rights, this court said that by such departure "those bar-riers, which are guarantees for the regular and impar-tial conducting of criminal cases, might be frittered away."

I cannot follow the invocation of the Attorney General which seems to have been followed by this court, and concur in what may fritter away any of the rights of an accused person on trial for his life.