ANDREW COPELAND, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

CRIMINAL LAW—DYING DECLARATIONS, WHEN ADMISSIBLE—OPINION EVIDENCE ON MEDICAL QUESTIONS.

1. To render dying declarations admissible, the trial judge must be fully satisfied that the deceased declarant, at the time of their utterance, knew that his death was imminent and inevitable, and that he entertained no hope of recovery. This absence of all hope of recovery, and appreciation by the deceased of his speedy and inevitable death is a preliminary foundation that must always be laid to make such declarations admissible. It is a mixed question of law and fact for the judge to decide before permitting the introduction of the declaration itself. It is not necessary that such preliminary foundation should be proven by express utterances of the deceased, but it may be gathered from any circumstance or from all the circumstances of the case.

2. The settled rule is that to give an opinion on medical questions, one may be qualified by study without practice, or by practice without study.

This case was decided by Division B.

Writ of Error to the Circuit Court for Santa Rosa County.

The facts in the case are stated in the opinion of the court.

*T. F. West,* for Plaintiff in Error.

*Park Trammell,* Attorney General, for the State.

TAYLOR, J.—The plaintiff in error brings here for review by writ of error a judgment of the Circuit Court of Santa Rosa County convicting him of murder in the first decree, with a recommendation of the jury to mercy, which reduced his sentence to life imprisonment.

There are thirty-one assignments of error; but we shall discuss those only that are argued here, treating the rest as abandoned.

A State's witness, who had testified to having seen the defendant and the deceased together at an abandoned dwelling house a short while before the deceased died in convulsions from the effect of poison, was permitted over the defendant's objection to testify that on examining this house where he found them together, he found a bed in the house that was: "just like two people had tumbled out of it * * sheet down at the foot * * and there was where two people had laid." The objection of the defendant was that it stated the opinion of the witness merely and not facts of which he had personal knowledge. The admission of this evidence constitutes the first assignment of error.

We find no error here. The evidence was pertinent to the issues. It tended to establish in the defendant an opportunity for the commission of the crime of which he stood charged, and we think enough facts are stated by

the witness as to the condition in which he found the bed in question to relieve the witness' answer from the charge of being merely his opinion.

The mother of the deceased, at whose house she died, as a witness for the State after testifying that the defendant had taken the deceased away from her home about nine days before her death, and had been to her home on three several occasions before taking the deceased away with him, was asked the question: "State what he did to her and with her on that occasion?"  To this question the defendant objected on the ground of immateriality, but the objection was overruled and the question allowed; to which the witness answered in effect that the defendant's manner was threatening, and that he then told the deceased that he was going to give her one more chance. This ruling constitutes the second assignment of error. There was no error here. The evidence objected to tended to prove the existence of a difference between the defendant and the deceased, and tended to establish motive for the crime, and also, in connection with the fact of his taking the deceased away with him from her home, tended to establish the desire by him of creating an opportunity for the crime. ·

Assignments of error numbers three, four, five, six, seven, eight, nine, ten, eleven, seventeen and eighteen are all discussed together and involve the propriety of the rulings of the trial court in admitting in evidence the *ante mortem* declarations of the deceased in the presence of various witnesses for the State.  Briefly stated the rulings involved in these assignments were made under the following circumstances and facts in proof.  It was shown that the defendant was a married man; that for some time prior to the death of deceased he had been having illicit sexual intercourse with her and had gotten her pregnant with child, with which she was pregnant at

the time of her death; that a short while prior to her death he had endeavored to get her to bind herself by an oath before a justice of the peace not to institute bastardy proceedings against him; that about nine days before her death he went to her mother's house where she was living and induced her, to some extent by threats, to go away with him. She remained away until the day before her death, when she came and got her little child, one and a half or two years old, and went away again. On the next day between the hours of one and two o'clock P. M., she and the defendant and her little child were seen together within a quarter of a mile of her mother's home at the abandoned dwelling house of her grand-father, where, the proof tended to show, they had spent the night before occupying the same bed. Immediately upon seeing that she was discovered there with the defendant, the deceased picked up her little child and went to her mother's home a quarter of a mile away. When she arrived there her face was abnormally flushed, and she complained of not feeling right, and immediately fell into convulsions that came on more violently and at ever decreasing intervals until she died within an hour after reaching her mother's home. After the first convulsion had subsided, her mother proposed to send for a physician, but the deceased said: "No use to send for the doctor, Andrew Copeland has poisoned me, he sure gave me strychnine * * that she wanted some water and he went to the spring (at her grand-father's house) and got it and she drank it without knowing that it was poisoned." That she did not speak of getting well at all * * said no use going to the doctor, she was poisoned, and that Andrew Copeland had poisoned her. That he had given her poison in a glass of water that she drank.

In the case of Lester v. State, 37 Fla. 382, 20 South. Rep. 232, it was held that: "to render dying declarations

admissible, the judge must be fully satisfied that the deceased declarant, at the time of their utterance, knew that his death was imminent and inevitable, and that he entertained no hope of recovery.   This absence of all hope of recovery, and appreciation by the deceased of his speedy and inevitable death is a preliminary foundation that must always be laid to make such declarations admissible. It is mixed question of law and fact for the judge to decide before permitting the introduction of the declaration itself.   It is not necessary that such preliminary test should consist of express utterances, but it may be gathered from any circumstances or from all the circumstances of the case." Dixon v. State, 13 Fla. 636; Richard v. State, 42 Fla. 528, 29 South. Rep. 413; Clemmons v. State, 43 Fla. 200, 30 South. Rep. 699; Gardner v. State, 55 Fla. 25, 45 South. Rep. 1028.

Guided by these authorities and the cases therein approvingly cited, we do not think the court erred in admitting the declarations of the deceased in this case. Within a few minutes after drinking a glass of water given her by the defendant, upon arriving at the home of her mother, the deceased complained of not feeling right with her face abnormally flushed, she immediately falls into violent convulsions, and dies within an hour; on the proposition being made to have a doctor sent for she declares "there is no use sending for a doctor. I've been poisoned by Andrew Copeland; he sure gave me strychnine." Under these circumstances we think the trial judge was justified in concluding that she appreciated the hopelessness of her condition, and that she knew that her death was imminent and inevitable.

The court, over the defendant's objection, permitted a State's witness to testify in substance that the defendant came to him in the month of July next preceding the month of October when the deceased died, and told him

that he was in trouble with the deceased, that he had gotten her pregnant with child and asked the witness for advice as to what to do about it. Various objections to this evidence were interposed and motions made to strike it, and the adverse rulings of the court thereon constitute the twelfth, thirteenth, fourteenth, fifteenth and sixteenth assignments of error. There was no error here. The testimony, under the circumstances of this case, tended strongly to prove the existence of motive for the crime afterwards committed, and because of the continuing condition of pregnancy of the deceased up to the time of her death, was not objectionable on the ground of remoteness.

A witness for the State over the defendant's objection was permitted to testify in substance that a short while before the death of the deceased the defendant stated to him in a conversation that he reckoned he would have to get lumber and build a house, that they were going to make him support the deceased, Lula Dixon, and he thought it would be cheaper to build a house and take care of her than to support her any other way. That defendant told him that the deceased threatened to go up to a Justice of the Peace and get an affidavit that he had procured to be fixed up, and that there was some money due on it to the Justice and he wanted to get this money so as to beat the deceased.

The adverse rulings of the court in admitting this evidence and in refusing the defendant's motion to strike it out constitute the nineteenth and twentieth assignments of error. There was no error here. The evidence tended strongly to establish motive for the crime. It showed that the results of his illicit intercourse with the deceased hung like an everpresent nightmare about the defendant's neck.

A physician as witness for the State was allowed, over the defendant's objection, to testify to the physical symp-

toms produced by strychnine poison, and to the exaggeratedly congested condition of the abdominal viscera of the deceased which he found to exist upon an autopsy made by him of her body shortly after her death, and to state that the conditions that he found might have been produced by strychnine or ergot poisoning. This witness also stated that he had never had any personal experience with a case of strychnine poisoning; that all that he knew about it was derived from the study of medical books. The defendant also moved to strike out this evidence on the ground that the witness showed by his evidence that he had not had any experience or personal observation in cases of strychnine poisoning, but the judge denied such motion and these rulings constitute the twenty-first and twenty-second assignments of error. There is no error here. The rule is very well settled that to give an opinion on medical questions, one may be qualified by study without practice, or by practice without study. Lawson on Expert and Opinion Ev. (2nd Ed.) Sub. Rule 2 p. 134; People v. Millard, 53 Mich. 63, 18 N. W. Rep. 562; Fordyce v. Moore (Tex. Civ. App. 1893), 22 S. W. Rep. 235; Healy v. Visalia & T. R. Co., 101 Cal. 585, 36, Pac. Rep. 125; State v. Green, 48 So. Car. 136, 26 S. E. Rep. 234. Also see Schley v. State, 48 Fla. 53, 37 South. Rep. 518.

The twenty-third, twenty-fourth and twenty-fifth assignments of error are predicated upon cross-interrogatories propounded by the State's Attorney to the defendant himself while a witness on his own behalf that were objected to by the defendant. All of these questions were objected to on the ground that they were not in pursuit of the direct examination. We think that the questions objected to were germain to the object of the examination of the witness in chief, and tended to sift the truth of his story, and that they were pertinent to the issues, and were properly admitted.

The thirty-first and last assignment of error presented, is the denial of the defendant's motion for new trial, upon the grounds that the verdict is not supported by the evidence and is contrary to the evidence.

There was great conflict in the evidence touching the presence of the accused in the company of the deceased on the day of and shortly before her death, but the jury, an apparently fair and impartial one, have settled that conflict on the side of the State, and after a careful consideration of the entire evidence, we are unable to adjudge that the verdict of the jury was not thereby fully sustained, particularly after the trial judge who saw the witnesses and heard their evidence, has declined to interfere with their finding.

Finding no error, the judgment of the Circuit Court in said cause is hereby affirmed at the cost of Santa Rosa County, the plaintiff in error having been adjudged to be insolvent.

HOCKER and PARKHILL, JJ., concur.

WHITFIELD, C. J., and SHACKLEFORD and COCKRELL, JJ., concur in the opinion.