204 So.2d 336 (1967)
Nellie Jo HAWKINS and Harold Eugene Hawkins, Her Husband, Appellants,
v.
Dr. M.A. SCHOFMAN, Appellee.
No. 66-515.
District Court of Appeal of Florida. Third District.
November 28, 1967.
Rehearing Denied December 19, 1967.
*337 Podhurst & Orseck, Miami, Spence, Payne & Masington and J.B. Spence, Miami, for appellants.
Blackwell, Walker & Gray and James E. Tribble, Miami, for appellee.
Before CHARLES CARROLL, C.J., and BARKDULL and SWANN, JJ.
CHARLES CARROLL, Chief Judge.
The plaintiffs appeal an adverse judgment entered on a directed verdict for the defendant. Plaintiff Nellie Jo Hawkins was operated upon by the defendant, Dr. M.A. Schofman, for removal of a lymph node or nodule from the area of the posterior triangle on the right side of her neck. Following the operation she was left with a partial paralysis, manifested by a droop of her right shoulder and loss of function of the shoulder and arm such as normally may result from injury or damage to the spinal accessory nerve which lies in the area of the neck from which the nodule was removed.
At the conclusion of the presentation of evidence on behalf of the plaintiffs, the defendant moved for and was granted a directed verdict. In seeking reversal of the judgment entered thereon, appellants argue that the trial court committed error in excluding the testimony of Dr. McIntyre, a neurologist, offered to show the approved medical standard for the operation in question and a departure therefrom by the defendant, *338 and, further, that the evidence presented at the trial, without the testimony of Dr. McIntyre, was sufficient to establish a prima facie case.
We hold, as contended by appellants, that the trial court committed error in excluding the testimony of Dr. McIntyre. The plaintiff proffered the opinion testimony of Dr. McIntyre to the effect that the medically recognized standard in such an operation was to locate, isolate and safeguard the nerve in question before the removal of any tissue, and that in the performance of the operation the defendant doctor departed from such standard in a manner which could have caused or risked injury to the nerve by failing to make a sufficiently large incision to properly see and locate the nerve and by failing to use electro-stimulation to identify the nerve prior to removing any tissue; and that the injury to Mrs. Hawkins resulted therefrom.
The trial court held Dr. McIntyre was unqualified to give opinion testimony concerning the operative procedure involved here because he had had no personal experience in performing such an operation. Regarding his qualifications it was shown that Dr. McIntyre had received a degree as a medical doctor from Columbia University in 1944, had been a practicing physician for twenty-two years, had served in the field of neurology at various named hospitals, was licensed to practice in Florida in 1952 and since had practiced in this state as a specialist in neurology and psychiatry, having acted as court appointed physician on occasions in Dade and Broward Counties; and Dr. McIntyre professed knowledge of the standard and procedure for an operation of the kind performed in this instance, through study thereof and observation including the witnessing of one performed a week previously.
The fact that Dr. McIntyre had not performed such an operation himself could have a bearing on the weight and credibility given to his testimony,[1] but did not render him incompetent under the law to express an opinion as an expert in a case of this character in view of his medical training and professed knowledge of the standard and procedure for such an operation through study and observation. See Schley v. State, 48 Fla. 53, 37 So. 518; Copeland v. State, 58 Fla. 26, 50 So. 621; Foster v. Thornton, 125 Fla. 699, 170 So.2d 459, 463, and Harris v. Smith, 8 Cir.1967, 372 F.2d 806, 813-814.
The proposition that a medical doctor can be qualified by education and study to give opinion testimony regarding a medical matter as to which he may not have had personal experience was established by the Supreme Court of Florida in Copeland v. State, supra. There the court said (50 So. at 624):
"A physician as witness for the state was allowed, over the defendant's objection, to testify to the physical symptoms produced by strychnine poison, and to the exaggerated congested condition of the abdominal viscera of the deceased which he found to exist upon an autopsy made by him of her body shortly after her death, and to state that the conditions that he found might have been produced by strychnine or ergot poisoning. This witness also stated that he had never had any personal experience with a case of strychnine poisoning; that all that he knew about it was derived from the study of medical books. The defendant also moved to strike out this evidence on the ground that the witness showed by his evidence that he had not had any experience or personal observation in cases *339 of strychnine poisoning, but the judge denied such motion, and these rulings constitute the twenty-first and twenty-second assignments of error. There is no error here. The rule is very well settled that, to give an opinion on medical questions, one may be qualified by study without practice, or by practice without study. * * *" (Citing numerous authorities, including Schley v. State, supra.) [Emphasis supplied.]
In the earlier Schley case, the Supreme Court had said (37 So. at 519):
"* * * The evidence discloses that the witness was a physician and druggist, was a graduate of a medical college, had practiced medicine for a period of 10 years, had studied poisons and their effect, and that he subscribed for, read, and studied medical journals which treated of the effect of poisons upon the human system. We discover no error in the ruling of the trial court in permitting the witness to testify as to how strychnine produces death. Eggart v. State, 40 Fla. 527, text, 536, 25 South. 144."
Also, the appellants' challenge of the directed verdict has merit. Examination of the record leads us to the conclusion that the testimony of the plaintiff, Mrs. Hawkins, the testimony of the defendant Dr. Schofman which the plaintiff introduced in the form of his deposition, and the opinion (deposition) testimony of Dr. Barrett,[2] when read and considered together, presented evidence "that could in law support a verdict for plaintiff," and therefore it was error to direct a verdict for the defendant.[3]
As we find it necessary to reverse on the first point considered, and the cause is being remanded for new trial, we refrain from a detailed statement or discussion of the evidence adduced as it relates to this second point.
For the reasons stated, the judgment is reversed and the cause is remanded for new trial.
Reversed and remanded for new trial.
NOTES
[1] "A physician is not incompetent to testify as an expert merely because he is not a specialist in the particular field of which he speaks. The weight to be given his testimony  i.e., `how expert is the expert?'  is another matter. That is purely a question of discretion for the trier of fact to determine." Wong Ho v. Dulles, 9 Cir., 1958, 261 F.2d 456-460. (Quoted recently in Harris v. Smith, 8 Cir.1967, 372 F.2d 806.)
[2] The trial court overruled an objection by the defendant to use of the testimony of Dr. Barrett based on the ground that he had not performed such an operation, a fact disclosed in his testimony, wherein the doctor stated, "I have never taken out one of these nodes. Really, the only operation I have done in this area is to crush the phrenic nerve or cut the scalene muscle, which is just a little below this site. A superficial operation in this area I just have not done."
[3] See § 54.17, Fla. Stat., F.S.A.; Chambers v. Loftin, Fla. 1953, 67 So.2d 220, 221; Mullis v. City of Miami, Fla. 1952, 60 So.2d 174; Cadore v. Karp, Fla. 1957, 91 So.2d 806; Paikin v. Beach Cabs, Inc., Fla.App. 1966, 187 So.2d 93, 94.