441 So.2d 660 (1983)
Wanda WRIGHT and Leland D. Wright, Her Husband, Appellants,
v.
Arnold SCHULTE, Jr., M.D., and Arnold Schulte, Jr., M.D., P.A., a Professional Association, Appellees.
No. 82-2740.
District Court of Appeal of Florida, Second District.
October 14, 1983.
Rehearing Denied December 2, 1983.
M. Blair Payne of Darby, Peele, Page & Bowdoin, Lake City, for appellants.
John D. Shofi and James L. Eskald of Marlow, Shofi, Ortmayer, Smith, Connell & Valerius, Tampa, for appellees.
DANAHY, Judge.
The plaintiffs in a medical malpractice suit appeal from an adverse final judgment entered after a jury verdict for the defendants. We reverse.
The plaintiffs brought this action to recover damages for the alleged negligence of Dr. Schulte in performing an abdominal hysterectomy on Wanda Wright. The plaintiffs claim that Dr. Schulte negligently cut and sutured Mrs. Wright's right ureter while performing the hysterectomy.
At trial, the plaintiffs called Dr. Douglas R. Shanklin as their expert witness. The issue before us is whether the trial judge erred in refusing to allow Dr. Shanklin to *661 testify as an expert. The doctor testified that he is a physician from Gainesville, Florida, a graduate of Syracuse University and the New York State College of Medicine, from which he received an M.D. in 1955. He then interned at Duke University Hospital in North Carolina. The first six months of his internship were in pathology and the second six months were a mixed internship of obstetrics and pathology.
Dr. Shanklin then served in the United States Navy and became one of three ward officers for obstetrics and gynecology. After his Navy service, Dr. Shanklin returned to Duke University and took some additional training in pathology. He then returned to Syracuse to finish his board qualifications in pathology. In 1960, he accepted an academic appointment at the University of Florida in Gainesville and served there for seven and one-half years before accepting a professorship of obstetrics and gynecology and pathology at the University of Chicago.
Dr. Shanklin testified that while at the University of Chicago, he taught residents in obstetrics and gynecology. During the course of his employment at the University of Chicago, he instructed students in the procedure known as a total abdominal hysterectomy. He said his teaching role was aimed at the residents, the young doctors, who were training for ultimate board certification in obstetrics and gynecology. Dr. Shanklin testified that he was frequently called on to render an opinion or to give advice to physicians who were performing gynecological surgical procedures.
In 1978, Dr. Shanklin left Chicago and returned to Gainesville, Florida, to serve as Director of Laboratories at a Gainesville hospital. In March of 1980, he went into private practice, predominantly in consultive pathology or forensic pathology.
Dr. Shanklin is the author of a number of articles published in medical journals and is senior editor of the Journal of Reproductive Medicine.
Specifically, Dr. Shanklin testified that he is familiar with the procedure known as a total abdominal hysterectomy. As a senior medical student he was second assistant on twenty-five to thirty such procedures. In the Navy, he was specifically responsible for about twenty-five or thirty abdominal hysterectomies. He was first assistant on perhaps forty more. With reference to the claim of the plaintiffs in this case, Dr. Shanklin testified that he refreshed his memory by checking out a number of textbooks and atlases on the subject of abdominal hysterectomies.
On cross-examination, Dr. Shanklin admitted that he is not a gynecological surgeon performing abdominal hysterectomies. He has no staff privileges at any hospitals in the Gainesville area. In short, he is not an operating surgeon. Despite Dr. Shanklin's impressive array of credentials, the trial judge refused to allow him to testify, commenting that "we can't have a gynecologist testifying about how a surgeon should do surgery." To the trial judge, a doctor who does not do surgery cannot be permitted to "sit in judgment" on a surgeon. In this the trial judge was clearly in error.
Section 768.45, Florida Statutes (1981), specifies who may testify as an expert in a medical malpractice action. The statute provides in part as follows:
Any health care provider may testify as an expert in any action if he:
1. Is a "similar health care provider" pursuant to paragraph (a) or (b); or,
2. Is not a similar health care provider pursuant to paragraph (a) or (b) but, to the satisfaction of the court, possesses sufficient training, experience, and knowledge to provide such expert testimony as to the acceptable standard of care in a given cause.
It is undisputed that Dr. Shanklin is not a similar health care provider as that term is defined in the statute. Under such circumstances, the trial judge must determine whether the proffered expert possesses sufficient training, experience, and knowledge to provide expert medical testimony as to the acceptable standard of care in a given cause. The trial judge in the case before us did not do this; he simply rejected Dr. Shanklin on the ground that he is not a *662 surgeon and, therefore, was incompetent to testify as to the standard of care in a case involving alleged negligence in the performance of a surgical procedure.
Our supreme court has commented that the rule is very well settled that, to give an opinion on medical questions, one may be qualified by study without practice, or by practice without study. Copeland v. State, 58 Fla. 26, 50 So. 621 (1909). Florida courts have made it clear that one need not be of the same specialty or branch of medicine, yet may be qualified to give expert testimony on the standard of care. E.g., Chenoweth v. Kemp, 396 So.2d 1122 (Fla. 1981) (neurosurgeons may testify in suit against specialists who are board certified in gynecology and anesthesiology); Fetell v. Drexler, 422 So.2d 89, 90 (Fla. 3d DCA 1982) (board certified surgeon may testify in suit against radiologist); Mitchell v. Angulo, 416 So.2d 910 (Fla. 5th DCA 1982) (error to rely solely on the fact that a proffered witness does not practice the same specialty as the defendant); Hawkins v. Schofman, 204 So.2d 336 (Fla. 3d DCA 1967), 46 A.L.R.3d 270 (no personal experience in performing the operation in question, but knowledge gained through study and observation of such an operation the previous week); Musachia v. Terry, 140 So.2d 605 (Fla. 3d DCA 1962) (medical doctor may testify in suit against osteopaths). Cf. Caputo v. Taylor, 403 So.2d 551 (Fla. 1st DCA 1981) (pathologist not permitted to testify as to the standard of care in treating potential breast cancer patients). Other cases on this point are collected at Annot., 31 A.L.R.3d 1163 (1970), and Annot., 46 A.L.R.3d 275 (1972).
We also find persuasive authority in an opinion from another jurisdiction dealing with a very similar situation. Radman v. Harold, 279 Md. 167, 367 A.2d 472 (1977). That case also involved alleged negligence in the performance of an abdominal hysterectomy. Plaintiffs offered an expert witness who was a certified specialist in internal medicine with many years of experience in his field, but who was neither a gynecologist nor a surgeon. The trial judge ruled that the proffered expert was not qualified to give an opinion or to pass judgment upon a gynecologist and surgeon. The Maryland court held that the trial judge applied an erroneous rule of law. The following portions of the court's opinion seem particularly appropriate to the instant case:
[A] witness may be competent to express an expert opinion if he is reasonably familiar with the subject under investigation, regardless of whether this special knowledge is based upon professional training, observation, actual experience, or any combination of these factors... .
... A witness is qualified to testify as an expert when he exhibits such a degree of knowledge as to make it appear that his opinion is of some value, whether such knowledge has been gained from observation or experience, standard books, maps of recognized authority, or any other reliable sources. The knowledge of an expert in any science or art would be extremely limited if it extended no further than inferences from happenings within his own experience. His testimony is admitted because it is based on his special knowledge derived not only from his own experience, but also from the experiments and reasoning of others, communicated by personal association or through books or other sources.
... [T]he mere fact that a person offered as a witness has not been personally involved in the activity about which he is to testify does not, as such, destroy his competency as an expert... .
... .
... [W]e perceive no reason why a person who has acquired sufficient knowledge in an area should be disqualified as a medical expert merely because he is not a specialist or merely because he has never personally performed a particular procedure... .
... .
We note that the great majority of courts in other jurisdictions which have considered the issue also have concluded that while the witness must have sufficient familiarity with the particular medical *663 technique involved in the suit, he need not have personally performed the procedure or be a specialist in the area.
367 A.2d at 474, 475.
We hold, therefore, that the trial judge erred in refusing to permit Dr. Shanklin to testify as an expert in this case. We reject the defendant's argument that this court should nevertheless affirm because the plaintiffs did not make a proffer of Dr. Shanklin's testimony. Such a proffer is not necessary in cases where the proffer would be a useless ceremony or where the court indicates that such offer would be unavailing or that the witness is incompetent. Seeba v. Bowden, 86 So.2d 432 (Fla. 1956); § 90.104(1)(b).
REVERSED and REMANDED for a new trial.
HOBSON, A.C.J., and BOARDMAN, J., concur.