BENTON, J.
In this medical malpractice case, the plaintiffs below maintain that the trial court erred when it disposed of their claim by summary judgment on the stated grounds that their only expert witness was not qualified to testify at trial. On appeal, they argue that the ruling that their medical expert was unqualified under section 766.102, Florida Statutes (2002), was error. We agree and reverse.
The issue framed below is whether Mrs. Loadholtz consented to a surgical procedure that Dr. Andrews performed.[1] She claims she repeatedly gave express oral instructions that he was not to perform the procedure, while he points to language in (a) form(s) she signed authorizing certain other named procedures and conferring broad, general authority in the event “that during the course of the operation ... unforeseen conditions ... necessitate an extension....”
Dr. Andrews is board-certified in obstetrics and gynecology, while the plaintiffs’ expert, Dr. Telle, is board-certified in general surgery. Dr. Telle actively practiced medicine during the five years preceding the allegedly tortious conduct, and during *1243 that period diagnosed, evaluated and referred for surgery conditions like those from which Mrs. Loadholtz suffered. Before his heart attack, he had himself performed surgery of the kind Mrs. Loadholtz claims she forbade Dr. Andrews to do, but Dr. Telle did not perform major surgery of any kind during the five-year period before Mrs. Loadholtz’s surgery. The trial court held that Dr. Telle could not testify because he did “not possess sufficient training, experience, and knowledge as a result of the active involvement and the practice of OB/GYN within the five-year period preceding” the incident.
Specifically at issue in the present appeal is the proper application of section 766.102(2)(c)(2), Florida Statutes (2002),[2] which allows testimony from an expert who is
not a similar health care provider ... but, to the satisfaction of the court, possesses sufficient training, experience, and knowledge as a result of practice or teaching in the specialty of the defendant or practice or teaching in a related field of medicine, so as to be able to provide such expert testimony as to the prevailing professional standard of care in a given field of medicine. Such training, experience, or knowledge must be as a result of the active involvement in the practice or teaching of medicine within the 5-year period before the incident giving rise to the claim.
This language does not require that the expert who is to testify practice the same specialty as the defendant who has been accused of malpractice. See, e.g., Meyer v. Caruso, 731 So.2d 118, 119 (Fla. 4th DCA 1999).
Section 766.102(2)(c)(2), Florida Statutes (2002), permits a physician to testify as an expert against another physician with a different specialty when the testifying physician possesses sufficient training, experience, and knowledge as a result of practice in a related field of medicine, so long as the training, experience, or knowledge is attributable in part to active involvement in the practice or teaching of medicine during the five years immediately prior to the incident giving rise to the claim.
In a medical malpractice action, the requirements for an expert to testify in judgment of another health care provider’s actions or inactions are defined by section 766.102, Florida Statutes (1991). Pursuant to this statute, experts are limited to those individuals who are “similar health care providers” and those individuals who are “not a similar health care provider” but “have sufficient training, experience and knowledge in a related field.” A requirement, added by the 1985 amendments to the medical malpractice statute, is that the individual’s training, experience or knowledge be a result of “active involvement in the prae- *1244 tice or teaching of medicine” within the five years preceding the incident. § 766.102(2)(c)(2), Fla.Stat. (1991). The clear purpose of the subsection is to restrict experts who claim to possess expertise on the gamut of medical problems and specialties and to eliminate those experts who are no longer actively involved in medicine. The statute does not exclude a specialist in one field from testifying against a specialist in another field.
Green v. Goldberg, 680 So.2d 606, 608 (Fla. 4th DCA 1993) (emphasis supplied). As was held before the Legislature added the five-year requirement, the “trial court may not always avoid this often difficult determination [as to sufficient training, experience, and knowledge] by resting solely on the fact that a proffered witness does not practice the same specialty as the defendant ].” Chenoweth v. Kemp, 396 So.2d 1122, 1125 (Fla.1981), receded from on other grounds, 800 So.2d 197 (Fla.2001). Accord, Wright v. Schulte, 441 So.2d 660 (Fla. 2d DCA 1983).
Here the evidence showed that both general surgeons and gynecologists diagnose, evaluate and treat surgically the condition with which Mrs. Loadholtz was afflicted. See generally, e.g., Meyer, 731 So.2d at 119 (holding trial court erred in striking all of oncologist’s testimony against a gynecological surgeon even though the oncologist was not board-certified in surgery or gynecology, where patient had undergone surgery for cervical cancer and the oncologist was a specialist in diagnosing cervical cancer); Green, 630 So.2d at 606 (holding an oncologist qualified to testify against a general surgeon regarding departure from standard of care in failing to diagnose breast cancer).
In contention below was simply whether, by executing consent form(s), Mrs. Load-holtz consented to an operation that she had verbally instructed Dr. Andrews not to perform. Evaluating the nature and scope of such putative consent in relation to the procedures actually performed does not require training, experience, and education that a board-certified general surgeon, even one like Dr. Telle who now limits himself to minor surgery, lacks. Given his active involvement in the practice of medicine during the five-year period before the incident, he was qualified under the statute to testify on the issue of consent. See generally, e.g., Meyer, 731 So.2d at 119; Myron v. S. Broward Hosp. Dist., 703 So.2d 527 (Fla. 4th DCA 1997) (holding pediatrician was qualified to give opinion as to negligence of neurosurgeon in failing to perform spinal tap on infant); Green, 630 So.2d at 606. See also Chenoweth, 396 So.2d at 1125; Wright, 441 So.2d at 660 (holding trial judge erred in refusing to permit gynecologist to testify against a surgeon who performed an abdominal hysterectomy).
The trial court erred in granting summary judgment in favor of Dr. Andrews on the basis of its erroneous disqualification of Dr. Telle as an expert witness. We reverse the judgment accordingly, and remand for further proceedings.
Reversed and remanded.
BARFIELD and VAN NORTWICK, JJ., concur.

. We note that the Fourth District has held that no expert witness need testify in a case where the only issue is a factual dispute about whether a patient gave consent to medical treatment. See Gouveia v. Phillips, 823 So.2d 215, 226 (Fla. 4th DCA 2002) (distinguishing a claim of a want of consent or that an operation was performed contrary to a patient’s instructions, for which medical expert testimony is only required if the discrete issue to be decided is not within the abilities of lay jurors, from a claim that the consent given was not "informed consent,” which requires expert medical testimony as to prevailing standards). We need not reach this question in the present case, however, because appellants have argued on appeal only that their expert was erroneously disqualified.

. This is, incidentally, the same version of the statutory provision that was in force in 1996, when Mrs. Loadholtz underwent surgery. This version applies despite the amendments that took effect on September 15, 2003, see Ch.2003-416, § 48, Laws of Fla., because section 86 of chapter 2003-416 provides:
It is the intent of the Legislature to apply the provisions of this act to prior medical incidents, to the extent such application is not prohibited by the State Constitution or Federal Constitution, except that the changes to chapter 766, Florida Statutes, shall apply only to any medical incident for which a notice of intent to initiate litigation is mailed on or after the effective date of this act.
In the present case, the notice of intent to initiate litigation was mailed well before September 15, 2003.