967 So.2d 354 (2007)
J.V., Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILY SERVICES, et al., Appellees.
No. 3D07-887.
District Court of Appeal of Florida, Third District.
October 10, 2007.
Sanford Rockwitz, for appellant.
Karla Perkins, Assistant District Legal Counsel, for appellee, Department of Children and Family Services; Hillary S. Kambour, for appellee, Guardian Ad Litem Program.
Before COPE, GREEN, and ROTHENBERG, JJ.
ROTHENBERG, Judge.
J.V. ("the mother") appeals the trial court's order adjudicating her infant son, J.T., dependent. As we conclude that the *355 adjudicatory order entered by the trial court, finding that the mother and A.T. ("the father") physically abused J.T., is supported by competent substantial evidence, we affirm.
J.T. was born on March 26, 2006. Shortly thereafter, the mother lost custody of her older child. On June 15, 2006, J.T. was taken into custody by the Department of Children and Family Services ("the Department") based upon allegations of domestic violence between the mother and father. On June 23, 2006, however, J.T. was returned to his parents' custody over the Department's objection. Approximately three weeks after J.T. was returned to his parents, they took J.T. to the hospital when it became apparent that J.T. was suffering from pain to his left leg. It was ultimately determined that J.T., who was only three-and-a-half months old at the time, had sustained a fracture to his left femur. After a full trial, the trial court found that J.T.'s injury was a result of physical abuse by his parents. The father appealed the trial court's order, and this court affirmed. See A.T. v. Dep't of Children & Family Servs., 959 So.2d 736 (Fla. 3d DCA 2007).
In this appeal, the mother contends that there was insufficient competent evidence introduced at trial to support the trial court's findings that J.T. had, in fact, sustained a fracture to his femur, and that the complained-of injury was a result of physical abuse by her.
Dr. Walter Lambert, a board certified pediatrician and an expert in child abuse, testified that J.T. had a fracture to his left femur. He explained that although the initial x-rays performed at Memorial West Hospital did not reveal the fracture to J.T.'s femur, the CT Scan performed at Joe DiMaggio Children's/Memorial Regional Hospital did reveal the fracture. In concluding that J.T.'s femur was fractured, Dr. Lambert testified that he was relying on both the radiological reports from the hospitals as well as his own evaluation of the x-rays and CT Scan.
The mother contends that because Dr. Lambert is not a radiologist, he was not qualified to render an opinion based upon his reading of the x-rays and CT Scan, and that it was error to permit Dr. Lambert to rely upon medical records authored by the radiologists. We disagree.
The Florida Supreme Court and this court have recognized that it is generally within the trial court's discretion to determine the sufficiency of a witness' qualifications to permit the witness to render an opinion as an expert, and that the trial court's decision whether or not to accept the witness as an expert will not be reversed absent a clear showing of error. See Ramirez v. State, 542 So.2d 352, 355 (Fla.1989); Johnson v. State, 438 So.2d 774, 777 (Fla.1983); Davis v. Caterpillar, Inc., 787 So.2d 894, 897 (Fla. 3d DCA 2001) (citing Geralds v. State, 674 So.2d 96, 100 (Fla.1996)).
Dr. Lambert testified that "looking at x-rays is part of [his] general practice. . . . I probably have more experience at looking at children's films than does a given radiologist." Given Dr. Lambert's extensive experience as a pediatrician and expert in child abuse cases, as well as his experience in reading x-rays and CT Scans in the normal course of his practice, we find no fault with the trial court's decision to permit Dr. Lambert to provide expert testimony regarding the nature of J.T.'s injury. "A physician is not incompetent to testify as an expert merely because he is not a specialist in the particular field of which he speaks." Hawkins v. Schofman, 204 So.2d 336, 336 n. 1 (Fla. 3d DCA 1967) (quoting Wong Ho v. Dulles, 261 F.2d 456, 460 (9th Cir.1958)).
*356 J.V. argues that Dr. Lambert should not have been permitted to rely on the hospital radiologist's report that the x-ray and CT Scan showed a fracture. That objection was properly overruled. In G.V. v. Department of Children & Families, 795 So.2d 1043 (Fla. 3d DCA 2001), this court held that Dr. Lambert was allowed to base his testimony on x-ray reports of a pediatric radiologist. "`If the facts or data are of a type reasonably relied upon by experts in the subject to support the opinion expressed, the facts or data need not be admissible in evidence.'" Id. at 1048 (quoting § 90.704, Fla. Stat. (1998)).
J.V. argues, however, that this analysis has been undercut by Linn v. Fossum, 946 So.2d 1032 (Fla.2006). We disagree. The Linn case involved an expert who testified in court about opinions she solicited from multiple other experts who had no knowledge of the case and did not testify at trial. Id. at 1034-35. The Linn court prohibited an expert from serving as a mere conduit for such a "curbside consult." Id. at 1035-39. In so holding, the Linn court "emphasize[d] that our opinion today in no way precludes experts from relying on facts or data that are not independently admissible in evidence `[i]f the facts or data are a type reasonably relied upon by experts in the subject.'" Id. at 1033 (quoting § 90.704, Fla. Stat. (2005)). Dr. Lambert's reliance on the radiologists' reports is consistent with Linn.
The second issue raised by the mother is the sufficiency of the evidence that the injury suffered by J.T. was a result of physical abuse by his parents. Dr. Lambert testified that based upon the child's age (he was three-and-a-half months old at the time), he could not have suffered a traumatic event sufficient to result in a fracture of his femur without alerting his caretaker(s). Neither parent offered a history of events which could have explained the fracture when they discussed the issue with Dr. Lambert initially. The only explanation they offered was that on July 12, 2006, the day before the injury was discovered, J.T.'s four-year-old brother allegedly picked J.T. up out of the bouncer J.T. was seated in, and he was carrying J.T. when the mother returned to the room and discovered him with the baby in his arms. The mother, however, testified that J.T. was not crying; did not appear to be injured; and showed no signs of distress throughout the day, that night, or the following morning. Dr. Lambert testified that a fracture to the child's femur required force and trauma; the injury was painful to the child because pieces of the bone were rubbing against each other causing internal swelling around the fractured bone; and, therefore, if J.T. was injured by his brother, J.T. would have first exhibited signs of distress to his leg on July 12th, which is the day J.T.'s brother visited the household, not on July 13th, as claimed by the mother.
The undisputed evidence is that J.T. suffered a fracture to his left femur. This injury was as a result of a traumatic event. The child's parents, however, failed to offer any evidence of a traumatic event, and were the child's only caretakers. We, therefore, conclude that as there was sufficient evidence to support the trial court's finding that the Department established by a preponderance of the evidence that the mother and father had physically abused J.T., we affirm the trial court's order adjudicating J.T. dependent. See C.W. v. Dep't of Children & Family Servs., 904 So.2d 588, 590 (Fla. 3d DCA 2005) (holding that circumstantial evidence is as probative as direct evidence and may be relied upon in establishing a case of child abuse); see also A.D. v. Dep't of Children & Families, 837 So.2d 1078, 1079 (Fla. 5th DCA 2003) ("In order to adjudicate a child *357 dependent, the trial court must find by the preponderance of the evidence that the child has been abused, abandoned, or neglected, or is at substantial risk of imminent abuse, abandonment, or neglect.").
Affirmed.