SALTER, J.
A nineteen-year-old formerly in foster care, J. J., appeals a final administrative order of the Agency for Persons with Disabilities (Agency) determining that he is ineligible for Home and Community Based Services (HCBS) based on the statutory criteria for “intellectual disability.”[1] We affirm. The order is based on competent, substantial evidence, in the form of expert testimony and evaluations, IQ test results, and observations of J.J.’s adaptive behaviors. We are prohibited by statute from substituting our own judgment regarding the disputed facts when the administrative findings are based on competent, substantial evidence. § 120.68(7)(b), Fla. Stat. (2013).
J.J.’s reliance on Webb v. Fla. Dep’t of Children & Family Servs., 939 So.2d 1182 (Fla. 4th DCA 2006), is unavailing. In that case, the applicant’s expert testified on the basis of much more extensive information, including IQ testing when the applicant was only ten years old, and the hearing officer failed to make findings on whether the applicant exhibited deficits in adaptive behavior and other factors enumerated in the statute. In the present case, the hearing officer considered relevant evidence and made the requisite findings.
*373 Several years after Webb was decided, the Agency promulgated administrative rules regarding eligibility for HCBS under the “intellectual disability” definition. Florida Administrative Code Rule 65G-4.017 (3)(a) authorizes “closer scrutiny” of IQ scores when there is significant variability in scores over time, among different tests, or in subtest scorés of a single full-scale score. Such scrutiny may include, as here, “review of school records, school placement, achievement scores, medical records, medication history, behavior during testing and the psychosocial situation at the time of testing.” The Agency’s expert addressed these facts, including J.J.’s multiple psychiatric inpatient admissions, his schizophrenia, and his cannabis dependence.
Nor did the hearing officer commit error by allowing the Agency’s expert to base her opinion on records and testimony that might otherwise have been inadmissible. Section 90.704, Florida Statutes (2013), “Basis of Opinion testimony by experts,” provides:
The facts or data upon which an expert bases an opinion or inference may be those perceived by, or made known to, the expert at or before the trial. If the. facts or data are of a type reasonably relied upon experts in the subject to support the opinion expressed, the facts or data need , not be admissible in evidence.
We have regularly applied this rule of evidence in considering objections to otherwise-inadmissible facts or data considered by experts in formulating their opinions. J.V. v. Dep’t of Children & Family Servs., 967 So.2d 354, 356 (Fla. 3d DCA 2007). When an expert has considered and testified regarding' such, facts or data, we have observed that an alleged error in actually admitting the facts or data into evidence may be entirely harmless. Kloster Cruise, Ltd. v. Rentz, 733 So.2d 1102, 1103 (Fla. 3d DCA 1999). Such an analysis applies to J.J.’s hearsay objections in the present case.
Although we affirm the Agency’s final order, we acknowledge the important pro bono efforts expended for JJ.’s benefit by the Children’s Home Society and the Children & Youth Law Clinic at the University of Miami School of Law. J.J. may not have prevailed regarding his application for HCBS, but he was professionally and ably represented.
Finally, we consider it appropriate to express a concern with the Agency’s role in the adversarial process reported in the record of this case. J.J. lost his mother when he was seven years old. His father played no role in J.J.’s life. Though raised for some time after his mother’s death by an older sister, J.J. was placed in the custody of the Department of Children and Families and then brought into foster care under the supervision of the Children’s Home Society. There is no dispute that, he has been involuntarily committed under the Baker Act[2] on numerous occasions, for suicidal and homicidal threats, psychosis, and medication management for stabilization. The record discloses a diagnosis with schizophrenia, undifferentiated, and cannabis dependence.
The essence of the Agency’s defense has been that J.J. is disabled, but he is not disabled within the applicable statutory definition for “intellectual disability” determining his eligibility for HCBS. The Agency has prevailed on that defense, and that is the way an adversarial system operates.
But all of this contradicts the Agency’s name, “Agency for Persons with Disabili *374 ties” (not “Agency for Persons with Some Disabilities”). In light of the testimony of the well-credentialed experts and well-intentioned caseworkers marshaled by the Agency in this record, and the. cost to the State of the Agency’s defense, it would seem logical that the Agency would offer an opinion on what services and assistance J.J. is eligible for if he is not eligible for HCBS under the “intellectual disability” criteria. There is no doubt that J.J. is disabled in a way that requires substantial public assistance, whether charitable or governmental. There is no doubt, reading this record, that J.J.’s emotional and behavioral disorders have already presented, and will continue to present, a likelihood of serious bodily harm to himself or others; see section 394.468(l)(b)l, Florida Statutes (2013).
The term “continuity of care management system,” assuring “within available resources, that clients have access to the full array of services within the mental health services delivery system,”[3] should mean that J.J. receives needed services before he turns up in one of Florida’s mental health courts (trailblazing and exemplary though those courts may be). Judicial restraint and the separation of powers preclude us from making this so in this case, but the Agency is a key player in Florida’s mental health services delivery system, even if its own scope of clients is circumscribed by statute.
If the Agency’s caseworkers and experts provided information to J.J. and his caretakers on other alternative services and it simply was not included in the record before us, excellent. But if that professional advice and continuity of care was not provided, then perhaps the Agency should consider doing so. The Agency and its expert mental health professionals would surely agree that J.J. should not be allowed to drop, like a fly ball between right and center field, covered by no one. The unanswered question in the aftermath of our affirmance is: if not HCBS, what?
Affirmed.

. § 393.063(21), Fla. Stat. (2013).

. § 394.451, Fla. Stat. (2013).

. § 394.4573(l)(d), Fla. Stat. (2013).