IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FIFTH DISTRICT

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

D.B.,

      Appellant,

v.
                              Case No.  5D21-2676
                              LT Case No. 20F-07613

AGENCY FOR PERSONS WITH DISABILITIES,

      Appellee.

_____/

Opinion filed October 14, 2022

Administrative Appeal from the
Department of Children and Families.

Matthew Armand Gripp, of Seminole
County Bar Association, Legal Aid,
Longwood, for Appellant.

Francis Albert Carbone II, General
Counsel, and Carrie Beth McNamara and
Rosa Emilia Llaguno, Senior Attorneys, of
Agency for Persons with Disabilities,
Tallahassee, for Appellee.

PER CURIAM.

D.B. appeals the final order affirming the Agency for Persons with Disabilities' ("the Agency") denial of eligibility for Home and Community-Based Services ("HCBS"). We reverse.

In June 2020, while 17 years old, D.B. applied to the Agency to obtain an HCBS waiver, which is a Medicaid-funded package of supports and services for persons with qualifying developmental disabilities.[1] D.B. applied under the category of intellectual disability, and the Agency subsequently issued a notice letter indicating that D.B. was eligible for the HCBS waiver program. The notice placed D.B. on the waiting list and explained that "[p]resently, the Agency does not have sufficient funds to serve all [Agency] consumers on the waiver . . . . Placement on a waiting list does not ensure future eligibility . . . . If funding becomes available, your eligibility status will be reviewed and updated."

Shortly thereafter, Embrace Families, a community-based care organization, requested that the Agency provide residential placement for D.B. in anticipation of his eighteenth birthday, which caused the Agency to "re-review" D.B.'s eligibility for the program. The Agency's State Office Psychologist, Dr. Martha Mason, conducted the re-review and determined

---

[1] See Fla. Admin. Code R. 65G-4.014(8); see also 42 U.S.C. § 1396n(c).

that D.B. was ineligible under the intellectual disability category. Thus, in October 2020, the Agency sent D.B. a notice of ineligibility for the HCBS waiver program, stating that he "had been determined to not have . . . intellectual disability as defined in Section 393.063(24), Florida Statutes."[2]

---

[2] Section 393.063(24) provides

> (24) "Intellectual disability" means significantly subaverage general intellectual functioning existing concurrently with deficits in adaptive behavior which manifests before the age of 18 and can reasonably be expected to continue indefinitely. For the purposes of this definition, the term:
>
> (a) "Adaptive behavior" means the effectiveness or degree with which an individual meets the standards of personal independence and social responsibility expected of his or her age, cultural group, and community.
>
> (b) "Significantly subaverage general intellectual functioning" means performance that is two or more standard deviations from the mean score on a standardized intelligence test specified in the rules of the agency.

§ 393.063(24), Fla. Stat. (2019). "[F]or most IQ tests, the mean is 100 and the standard deviation is 15. Thus, 'two or more standard deviations below the mean' generally translates to a full-scale score of approximately 70 points or below." O.H. v. Ag. for Pers. with Disab., 332 So. 3d 27, 37 (Fla. 3d DCA 2021) (Miller, J., dissenting).

D.B. disagreed with the Agency's determination and exercised his right to an administrative hearing.

Preliminarily, D.B. moved to determine the burden of proof, arguing that the burden should be on the Agency, given that it reversed its original eligibility determination. The hearing officer agreed and placed the burden on the Agency to prove by a preponderance of the evidence that D.B. did not qualify for the waiver program. Testimony at the hearing addressed, inter alia, three psychological evaluations—conducted when D.B. was ages 8, 16, and 17—reflecting his IQ test scores.[3] The IQ scores were inconsistent across the evaluations, and the witnesses disputed which scores and subscores were most indicative of D.B.'s intellectual functioning.

The hearing officer entered a lengthy final order rendering findings of fact and conclusions of law. Despite noting that the burden of proof was on the Agency, the order went on to conclude that "[t]he controlling laws above

---

[3] The two intelligence tests utilized were the Weschler Intelligence Scale for Children, Fourth Edition and the Weschler Adult Intelligence Scales, Fourth Edition. Both tests typically provide a Full-Scale IQ score ("FSIQ") and a General Ability Index score ("GAI"). Under the governing administrative rule, a single test or subtest should not be used alone to determine eligibility, and if there is a substantial amount of variability between IQ scores between tests or on different administrations of the same test, closer scrutiny is required. Fla. Admin. Code R. 65G-4.017(3)(a). Still, a single FSIQ score of 70 or below may be sufficient for eligibility. Id.

require Petitioner to provide evidence that he has significant deficits in adaptive functioning" and that D.B had failed to meet that burden. Additionally, the hearing officer found that D.B. had recorded an FSIQ score of 76, which was not two standard deviations below the mean. The hearing officer concluded that, based on D.B.'s FSIQ score, he did not manifest an intellectual disability under the Florida Administrative Code. This appeal followed.

D.B. argues that (1) the final order was not supported by competent substantial evidence due to inaccurate factual findings; and (2) the hearing officer applied incorrect legal standards. D.B. raises a number of additional arguments that we find were either not properly preserved for appeal or are unnecessary to address in light of our disposition on other grounds. "We review an agency's conclusions of law de novo and we review the record to determine whether competent substantial evidence supports the agency's decision. In doing so, 'we give no deference to agency interpretations of statutes or rules.'" O.H., 332 So. 3d at 29 (quoting G.R. v. Ag. for Pers. with Disab., 315 So. 3d 107, 108 (Fla. 3d DCA 2020)); see also Art. V, § 21, Fla. Const.

At the outset, we agree with D.B. that the hearing officer improperly shifted the burden of proof to him. Although the hearing officer noted that the

5

burden of proof was on the Agency, the conclusions of law indicate otherwise. Specifically, the hearing officer found that D.B. was required to provide evidence of significant deficits in his adaptive functioning and concluded that he had failed to do so. This was error and contrary to the pre-trial ruling placing the burden on the Agency.

Additionally, there is one significant inaccuracy in the hearing officer's factual findings that compels us to reverse. The order stated that D.B. "obtained a[n] FSIQ score of 76 at the age of 16 years old" and then concluded, "Based on Petitioner's FSIQ he did not manifest the intellectual functioning based on the Florida Administrative Code." (emphasis added). Critically, however, the record contains no such FSIQ score; the score of 76 represented a verbal comprehension index subscore.[4] Thus, the order explicitly indicates that the hearing officer based her decision, at least in part, upon a nonexistent FSIQ score.[5] We find that the Agency has failed to demonstrate that this misstatement of fact did not contribute to the hearing officer's conclusion that D.B. was ineligible. See J.J. v. Ag. for Pers. with

---

[4] The only FSIQ score in the record was a score of 67.

[5] The hearing officer also relied upon D.B.'s GAI score of 84 in light of the testimony by the Agency's expert that the GAI is a better metric for measuring intellectual functioning when there is variability in IQ scores. We express no opinion on the reliance on a GAI score over an FSIQ score for purposes of eligibility determinations.

<u>Disab.</u>, 174 So. 3d 372, 373 (Fla. 3d DCA 2014) (applying harmless error analysis to alleged error in administrative hearing).

Finally, the hearing officer also erred by misstating the law with regard to the validation of performance measures of adaptive functioning and, as a result, found a number of psychiatric reports not credible under Florida Administrative Code Rule 65G-4.017(3)(b). On remand, the hearing officer should apply the express language of rule 65G-4.017(3)(b) to such evidence when evaluating D.B.'s adaptive functioning. Regarding the validation portion of that analysis, the hearing officer should also consider the recent case of <u>Fatigato v. Agency for Persons with Disabilities</u>, 344 So. 3d 627 (Fla. 2d DCA 2022).

Accordingly, we reverse the order on appeal and remand for further proceedings consistent with this opinion. It is not our function to reweigh the evidence in these cases and we do not do so here. Our reversal is based entirely upon findings in the final order not supported by competent substantial evidence and legal errors therein.

REVERSED AND REMANDED.


WALLIS and NARDELLA, JJ., concur.
COHEN, J., concurs specially, with opinion.

7

COHEN, J., concurring specially.

I am in complete accord with the majority opinion. I write separately to note that our record reveals a documented history of D.B.'s intellectual deficiencies beginning at a very young age. D.B. was 17 years old when the Agency sent him a notice of eligibility for the waiver program, yet soon thereafter the Agency made a complete U-turn, despite virtually no change in D.B.'s condition. On top of that, the hearing officer rejected, improperly, a vast amount of evidence presented to rebut the Agency's case and establish the requisite eligibility criteria, instead relying almost entirely on the Agency's expert.[6] If we, as a society, are judged by how we treat our most vulnerable members, then the Agency came up short in D.B.'s case.

---

[6] One piece of evidence presented by the Agency was that D.B. had passed an Algebra class while in high school. But the Agency did not call any of the educators who had taught D.B. over the course of his educational lifetime, in contrast to the evidence proffered by D.B. Testimony from one of D.B.'s teachers, along with his educational records, renders the Agency's Algebra evidence suspect. In my view, the Agency's case is reflective of a system that passes children like D.B. down the line, despite their obvious intellectual deficiencies.